## Eshleman v. Martic Township, Appellant.

*Trespass—Drainage—Measure of damages—Evidence.*

The measure of damages in cases of injurious trespass, by water flowing from a public highway, is the cost of remedying the injury unless that equals or exceeds the value of the thing injured when such value becomes the measure. Evidence of the market value of the property, with and without the water flowing over it, is not appropriate to such case.

*Surrender of easement—Authority of supervisor—Nonuser.*

Where a township has acquired an easement to flow water over certain land, whether by grant or prescription, more than a mere nonuser for three years is required to destroy it. Nor is it within the power of one supervisor to grant a surrender of it. A transaction in which a valuable right of the township is relinquished without compensation is not within the scope of powers and duties which are merely ministerial.

*Repair of ditches—Duty of township.*

Where a township gives permission to a property owner to dig a ditch to drain water from the highway across his land in a certain direction, for his own convenience and upon terms, it is a question for the jury to determine from the evidence on what terms the permission was given, and whether the burden of keeping the ditch in repair was cast upon the township.

Argued May 19, 1892. Appeal, No. 161, Jan. T., 1892, by defendant, from judgment of C. P. Lancaster Co., Feb. T., 1888, No. 43, on verdict for plaintiff, Samuel Eshleman. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for draining water from highway across plaintiff's farm.

At the trial, before LIVINGSTON, P. J., there was evidence as to the following facts: Plaintiff purchased the farm in question in 1869. There was conflict of testimony whether the water since 1837 had flowed by the same channel from the public highway across the farm. In 1882 a supervisor of the township, after conferring with county auditors, gave plaintiff permission to close the drain and to make another on the opposite or east side of the road so as to drain the water over some waste land belonging to plaintiff. In 1885 however this east side drain was closed by the township and the water allowed to again flow through the old drain across the farm. For the damages thus caused to the land plaintiff brought suit in 1888.

Plaintiff, under objection and exceptions, gave evidence as to the market value of the farm with and without the water running over it. [1, 2, 5–8].

Defendant, on cross-examination, asked one of plaintiff's witnesses how much plaintiff would be injured by the appropriation of a strip of land sufficient for a drain to carry off all the water from the road. Objected to, objection sustained and exception. [3]

Defendant also asked the same witness on cross-examination what plaintiff's property was worth in the market immediately after the gutter was made on the east side of the public road. Objected to, objection sustained and exception. [4]

Defendant also asked one of his witnesses what it would cost to make the road permanently safe for travel. Objected to, objection sustained and exception. [9]

Plaintiff's points were as follows:

" 1. If the jury believe that Samuel Eshleman, the plaintiff in this suit, in pursuance of an agreement or understanding with and permission of the authorities of the township of Martic, constructed and opened the drain or ditch on the east of the road, and the same was sufficient to convey, and did convey, the drainage water from the road on and into the field of plaintiff on the east side of the road, the supervisors of the township had no right to close it up; and if they did so, and the water which could have been conveyed from the road through the drain or ditch, was turned in and on the property of plaintiff

on the west side, the verdict must be in favor of the plaintiff for such sum as, under the evidence, will compensate him for the damage done by so turning the water in and on his land. *Answer :* Affirmed, if the jury find from the evidence that the drain was made sufficient to carry off the water, and was used by the township for that purpose." [10]

" 2. If plaintiff constructed and opened the ditch or drain, as he testifies he did, under agreement with and permission of the township authorities, that the water from the road should be conducted through it to his field on the east side, with the understanding that the water should no longer be turned on his property on the west, the authorities had no right to close up said drain after it had been opened, if it was sufficient for the purpose for which it was constructed, but were bound to keep it open and in proper repair in the absence of any agreement that Eshleman should do so. *Answer :* Affirmed, if the jury find from the evidence that such drain was made by agreement with or permission of the supervisor and township authority." [11]

" 3. If there were natural water courses, depressions, ravines or drains through which the water could have flowed from the road before it reached the land of plaintiff, and they, or any of them, were closed or allowed to be closed by the township authorities, causing all the water to come down the road and increasing the volume cast upon plaintiff's land, the township is liable for whatever damage plaintiff may have sustained by having the water turned in on his land, that might have flowed from the road before reaching his land, through the natural water courses, depressions, ravines or drains, had the same been kept open." Affirmed. [12]

" 4. If the jury believe, from the evidence, that the drain or ditch on the east side of the road was at any time insufficient to carry off the water from the road, simply because it had become clogged, it was the duty of the supervisors to open it, and their failure to open it when clogged would make the township liable for any damage sustained by the water's running in and on the plaintiff's land, that might have been carried off through the drain if kept open and free from obstructions." Affirmed. [13]

" 5. If the jury believe that the water that ran in and on the

land of the plaintiff could have been conducted from the road in a manner that would not have caused injury to plaintiff or other landowners adjoining the road, it was the duty of the supervisors to so conduct or carry it off; and for any damage sustained by their failure to do so, he must be compensated by the township. *Answer :* This is true provided the jury find from their view and the whole evidence that the water could be so conducted and diverted from the road without unreasonable expense to the township." [14]

" 6: If, under all the evidence, the jury believe that the damage done the plaintiff could have been avoided by having the water properly carried off or conveyed from the road through the drain or ditch to his field on the east side, the verdict must be in his favor for such sum as will compensate him for the injury done to his property. *Answer :* This would be true, provided the jury find from the evidence that it could be properly carried or conveyed from this road at this point through the ditch or drain on the east side thereof, and that the drain was sufficient to so carry it on to Eshleman's other field, and thus let it run to the creek." [15]

Defendant's points were as follows:

" 1. If the defendant used the water course in question across the plaintiff's land for conveying water from the road notoriously, continuously, and adversely, for over twenty-one years prior to 1882, it gave it a legal right to continue the use of it in the same manner and to the same extent as long as it desired, without compensation to the plaintiff. · *Answer :* This would be true under the latest decision : Huddleston's Case, 111 Pa. 110. It appears as though this point should be affirmed, if no change has been made within twenty-one years. The jury will from all the evidence say whether or not there was any change in the user within twenty-one years prior to the commencement of this suit, whether or not any change of the place of its flow was made by Samuel Eshleman, the plaintiff, or the township, whether or not any other places where the water used to flow were closed and a greater volume of water thrown into the drain at Eshleman's. It would have to be used openly, notoriously, uninterruptedly and continuously and adversely, as it was used at the time suit was brought, for twenty-one years prior to the time of bringing this suit, in 1888, to give

the defendant such right.   The public, the township, the defendant here, and its officers have but an easement, have but the right to pass through the plaintiff's land over the public road, with the right to repair and keep it in good order for safe and convenient travel, and in so doing they have an undoubted right to enter upon his other land adjoining this roadbed on either side, and to cut ditches and make drains where it can be done to carry off the surface water collecting on the road, in such numbers, and at such points as in their judgments will best accomplish that purpose, doing the least injury to private property, without regard to where it would flow, if left alone, or naturally or how long it had continued to flow.   The law gives them authority to do so.   But they would have no right to increase the volume of water on this road by closing or permitting other drains thereon to be closed, and throw the water which ran therein, in enlarged and greatly increased volume, upon plaintiff's land to his injury within twenty-one years prior to the time this suit was brought, in 1888." [16]

" 2. If the jury believe from the evidence that the course of the water down the hill and through the plaintiff's land was the natural course of the Pequea creek, and that the supervisors used no artificial means, by embankments, drains or otherwise, to accumulate water that would not naturally flow through said water course, and, from the conformation of the ground, they could not cause the water to flow elsewhere without digging drains through the road embankments upon improved lands where it was liable to do damage, they committed no wrong by suffering it to flow through said natural channel on the land of the plaintiff.  *Answer :*  We cannot affirm this point as stated.   There was no natural water course, such as is recognized by law, shown here, no definite channel having a bed, sides or banks—no stream of water flowing—nothing more than mere surface drainage from rains, snows, etc." [17]

" 3. If the plaintiff bought his land in 1869, with a visible water course upon it, for the use and benefit of the township, which had been enjoyed by it continuously, notoriously and adversely, for more than twenty-one years, he has no right to complain, and is entitled to no compensation for the continuance of it.  *Answer :*  This point is refused.  There has been no such water course proved to exist in this case as would en-

able the defendant to acquire the right of flowage stated in the point, and contended for by defendant, or deprive the plaintiff of his right to complain and recover damages for injury done by the acts or negligence of defendant's officers, when proper proof of such negligence or injury is produced. And, if the jury believe, from the evidence, that Eshleman closed up this drain in 1872, and after its being closed the defendant, by its officers, opened it again, twenty-one years had not elapsed between that time and the bringing of the suit in 1888, and the plaintiff would not be estopped from complaining." [18]

" 4. The permission given by one of the supervisors of Martic township to the plaintiff to dig a gutter along the roadside at his own expense, to relieve his land on the west side of the road of the drainage, by running it to the east side on other land belonging to him, was not a contract, but a conditional license, and did not estop the township from returning the water to the old water course, when, in the judgment of the supervisors, on account of the insufficiency of the gutter, it was necessary in order to keep the road in proper and safe condition. *Answer:* If the supervisor and township auditors consented that plaintiff should dig the drain on the east side of the road where it was dug, and that this surface water should run through it, and not where it ran before, to the damage and injury of the plaintiff, but that that place should be closed—permitted him to dig and construct such drain at an expense on his part of about $200, and drain when completed was sufficient to and did accomplish its purpose, did properly drain the surface water off the road at this point, and after its construction the supervisors ratified the act by permitting it to remain and draw off the water from the time stated by the witnesses, such action would bind the township, and it would be obliged to allow it to remain open as a drain as it does other drains along its highways, and clean and keep it open as it does other drains along its highways when obstructed, and could not let it become obstructed, or let any person obstruct or fill it up to prevent the water from passing through it from the road, and thus turn the water back on Eshleman's land, to his great injury, without the township becoming liable for damages to compensate such injury." [19]

" 5. One supervisor of Martic township, without the presence

or advice of the others, could not make a contract with the plaintiff, binding upon the township, to abandon the right to use this water course over the plaintiff's land. *Answer:* One supervisor may abandon any drain and replace it by another, where it will do less injury to private property without injury to public travel, or accept one prepared by the land-owner without expense to the township; the doing so is not the making of such contract as requires the advice and consent of both supervisors. It is their duty to place these drains where best for the road and least injurious to private property. Courts say, one supervisor has power to make contract and employ men to do and make ordinary repairs, or work upon the roads, such as digging and making drains to carry off the water from a road already opened and in use, but one cannot bind the township by contracts for the opening of a new road." [20]

" 6. If the township had a right under the evidence to use the water course on plaintiff's land in 1882, and the latter made a gutter on the roadside by permission of a supervisor to relieve his land, he was bound in law to keep the gutter in such condition that the public highway was not injured by accumulations of water; if he did not the township had a right to return the water to the original water course. *Answer:* Refused. If the supervisor permitted plaintiff to change the drain, provided he would make it at his own expense, and nothing was said about his keeping it open after he had completed it, his duty was performed when it was finished. The drain thus made on the east side then took the place of the other drain where the water ran off defendant's road in on Eshleman, and became a township drain to carry the surface water from the road, and was to be cleaned as other township road drains, by the township supervisor. If they neglected or refused so to do, and plaintiff suffers injury thereby, he has his remedy by action and may recover." [21]

" 7. Under the law and the evidence in this case the verdict must be for the defendant." Refused. [22]

Verdict for plaintiff for $369.77 and judgment thereon. Defendant appealed.

*Errors assigned* were (1–9) rulings on evidence, quoting bills of exception and evidence; (10–22) instructions, quoting them.

*William D. Weaver* and *H. M. North,* with them *M. Brosius,* for appellants, cited: On measure of damages: Robb v. Carnegie, 145 Pa. 324; Lentz v. Carnegie, 145 Pa. 612. On power of one supervisor to bind township: Union Twp. v. Gibboney, 94 Pa. 534; Cooper v. Lampeter Twp., 8 Watts, 125; Woodring v. Forks Twp., 28 Pa. 355. On natural channel for discharge of water.: Palmer v. Waddell, 22 Kan. 352; Kauffman v. Griesemer, 26 Pa. 408; Martin v. Riddle, 26 Pa. 417. On loss of easement by nonuser: Stevenson's Ap., 17 W. N. 429; Kopf v. Utter, 101 Pa. 27; Washburn, Easements, 4th ed., 130, 135; Gould, Waters, 279, 335.

*William U. Hensel,* with him *J. Hay Brown* and *Benj. F. Davis,* for appellees, cited: On measure of damages: 2 Sh. & Redf. Neg. 750; Chase v. R. R., 24 Barb. 273; Schuylkill Nav. Co. v. Farr, 4 W. & S. 363; Huddleston v. West Bellevue, 111 Pa. 123. On duty of supervisors to keep ditches open: Edge v. Com., 7 Pa. 275. On power of one supervisor to bind township: Dull v. Ridgeway, 9 Pa. 272; Union Twp. v. Gibboney, 94 Pa. 539; Com. v. Colley Twp., 29 Pa. 123; Somerset Twp. v. Parsons, 105 Pa. 361.

OPINION BY MR. JUSTICE MCCOLLUM, November 11, 1892:

The several specifications of error which relate to the admission of evidence on the subject of damages may be considered together. This evidence consisted mainly of the opinions of witnesses respecting the difference in the market value of the property with the water flowing upon and across it as described by them, and the market value of it with the water excluded from it. These opinions were evidently formed on the theory of a continued and permanent use of the property by the municipal authorities for the purpose of drainage in the manner complained of. It was a species of evidence appropriate to a case for the recovery of damages resulting from an easement created by the exercise of the power of eminent domain, but it was not applicable to this issue. In the recent case of Robb v. Carnegie, 145 Pa. 324, and Lentz v. Carnegie, Ibid. 612, this subject was fully considered, and it was held that the true measure of damages in a case like the present, is the cost of remedying the injury unless that equals or exceeds the value of the thing injured, when such value becomes the measure.

The case in hand is an action of trespass for turning the water, or permitting it to run from the highway, upon the land of the appellee. In the act or omission complained of there was no acquisition by the township of a right to turn the water upon his land, or to allow it to flow there. The injury inflicted was not necessarily continuing and permanent, because it was practicable to restore the property to its former condition. In his charge to the jury the learned judge said: "In estimating the damages you will be confined within six years prior to February 1, 1888. My own judgment is that you should not go further back than 1885, when the witnesses say the drain on the east side was closed and the water was turned in on plaintiff's property by the supervisors. You must be confined to actual damages done during the time stated, and the loss and injury to his property, not permanently but during the period stated, for if the water be taken away his injury will cease. Nor can you allow any damages since February 1, 1888, when suit was brought; if any damages have been sustained since that, they form the subject of another action." The substantial correctness of this instruction is not questioned by either party, and it serves to show that error was committed in the admission of the evidence under consideration, but it fails to render such error harmless. In the view we have taken of this evidence the refusal to allow the questions on cross-examination which is the subject of complaint in the third and fourth specifications, becomes unimportant. These questions were pertinent to the examination in chief, and consistency called for their allowance, but as the evidence to which they referred was inadmissible a discussion of them at this time would be profitless. We are not satisfied that any error was committed in the rejection of the question contained in the ninth specification.

If prior to 1882, when it is alleged permission was given to the appellee to convey the water across his field on the east side the highway, the township had acquired the right to have the water flow upon his land on the west side at the place and in the manner complained of in this action, it may well be doubted whether the evidence was sufficient to justify the conclusion that such right had been surrendered or lost. It matters not whether the easement was obtained by grant or

prescription. In either case something more than mere nonuser for a period of three years was required to destroy it. In considering the permission to the appellee to turn the water on the east side of the road it is important to know what the rights of the township were at the time it was given. If such permission involved the surrender of an easement by virtue of which the township could lawfully and without expense turn the water on the appellee's land on the west side of the road, it was not within the power of one supervisor to grant it. A transaction in which a valuable right of the township is relinquished without compensation is not within the scope of powers and duties which are merely ministerial. The appellant's first point was therefore pertinent to the issue, and should have been affirmed without qualification. The evidence on which it was predicated was sufficient to authorize a finding of such user by the township as was described in it. The answer to it was obscure and misleading and practically a denial of it. The point invited the jury to consider the evidence respecting the user by the township of the appellee's land on the west side of the road prior to 1882, and the purpose of it was to ascertain the rights of the parties at the time of the alleged permission to the appellee to convey the water across his field on the east side. If it was found that there was such an adverse user by the township as clothed it with a prescriptive right to turn the water upon the land of the appellee on the west side of the highway, the instruction concerning the effect of the permission given to him by the supervisor was erroneous, because, as we have already seen, it was not within the power of one supervisor to surrender such right.

It is clear that the permission to the appellee to dig a ditch on the east side, for the purpose of carrying the water from the highway, was granted on his request, for his accommodation and on terms, but it is not clear that the burden of keeping it open and in repair thereafter was cast upon the township. It was for the jury to determine from the evidence on what terms the permission was given.

The specifications of error which complain of rulings at variance with the foregoing views are sustained and the remaining specifications are overruled.

Judgment reversed and new venire ordered.