# Welliver *v.* Pennsylvania Canal Company, Appellant.

*Practice, C. P.—Trespass—Sending statement out with jury—Assign-
ment of error.*

It is not good practice in an action of tort to send a statement of any
kind with the jury, particularly in a case where the evidence is conflict-
ing, and where the claim for damages is simple and easily kept in mind
by the jury.

Where in an action of trespass a statement is sent out to the jury, but
no exception is taken at the time, and no request is made at the time that
the statement be placed upon the stenographer's notes, and although such
a request and exception were made afterwards and allowed, the statement
in fact is not placed upon the notes, and never became part of the record,
no assignment of error can be based upon the action of the court in per-
mitting the statement to be sent out with the jury.

*Trespass—Damages to land—Evidence.*

In an action of trespass to recover damages for injuries to land, the
measure of damages is the cost of remedying the injury, unless such cost
exceeds the value of the property injured in which case the value of the
property becomes the measure of damages. It is not therefore improper
to admit evidence as to the value of the land so that the jury may not re-
turn a verdict in excess thereof.

*Trespass—Injury to land—Canal—Duty to landowner.*

Where land is being injured by a break in a canal, it is the duty of the
landowner to use all reasonable care, skill and diligence adapted to the
occasion to remedy and arrest the injury, but it is not his duty to construct
a ditch which will cost more than the value of the land, inasmuch as the
landowner can recover no more than the value of the land in any event,
and is not bound to expend more in preventing the injury than he could
recover from the canal company,

*Practice, C. P.—Trial—Points.*

Points which misconceive the evidence, ignore the testimony and assume as facts matters which are contradicted, are properly refused.

*Canal companies—Duty as to construction and maintenance of banks.*

In the erection, construction and maintenance of its banks, a canal company is not an insurer against percolations and seepage of water through the ground through which and on which it is erected, and such percolations must be shown to be the result of gross negligence of defendant company and not due to the ordinary and natural seepage of the land through which and out of which the canal is built.

Argued Jan. 15, 1903.    Appeal, No. 37, Jan. T., 1903, by defendant, from judgment of C. P. Columbia Co., Sept. T., 1899, No. 308, on verdict for plaintiff in case of Ida Welliver v. Pennsylvania Canal Company.    Before BEAVER, SMITH, PORTER and MORRISON, JJ.    Affirmed.

Trespass to recover damages to land.    Before LITTLE, P. J.

At the trial the court admitted under defendant's objection and exception evidence as to the market value of the land. [2–4]

Plaintiff presented this point:

2. That if the jury find from all the evidence that through the negligence of defendant the water was allowed to flow upon the plaintiff's land, it was not her duty nor the duty of the predecessor in title, to construct or maintain a ditch to carry off the same, but only to use ordinary care and prudence, in preventing continuing injury.    *Answer:* Affirmed. [5]

Defendent presented this point:

3. That the part of the towpath complained of was, under the evidence, repaired in 1865 by the predecessor in title of defendant company, and for any negligence in such repair, as the proximate cause of the percolation, seepage or oozing, complained of, the defendant is not liable.    *Answer:* Affirmed as an abstract proposition, but plaintiff assigns no such cause as a ground of action in her declaration, and we do not see any applicability of the point here. [6]

16. That under the 5th section of Act of April 21, 1858, P. L. 414, which requires the purchaser to only maintain such banks as the state itself maintained, the jury must first determine the character of the canal bank kept up by the state;

and that plaintiff having failed to show the character of the bank at the time of the sale thereof by the state cannot recover in this action. *Answer:* Refused as here stated because so long as the canal is used for navigation it is some reason for the presumption that the canal is and has been in such condition of repair as it was when under the supervision of the canal commissioners for the purpose of navigation. [7]

15. That plaintiff having testified that none of the alleged seepage comes from the break of 1891–1892, but that it is wholly due to the repairs of 1865, the intervening thirty-four years before suit brought have established defendant's right to have the seepage pass off upon plaintiff's land. *Answer:* If the ditch at the bottom of the canal bank for the drainage of leakage has existed there for twenty-one years or over, whether put there either by the predecessor in title of either the canal or the farm, it must be presumed to have existed there by right of purchase or other right. [8]

17. That as the evidence shows an alleged seepage only sufficient to fill a four and a half inch pipe (by two pipe tests) or a ten and one half inch pipe by mere estimate, from a section of canal 400 yards in length containing a body of water sixty feet wide and six feet deep whose bottom is above the level of plaintiff's land, and the line of which canal is through a gravel formation; such alleged seepage is insufficient to establish negligence and the verdict must be for the defendant. *Answer:* Refused as here stated. [9]

5. That it is incumbent on plaintiff to show the places where the percolations took place and that such percolations were not the fault of the company, which erected the towpath in 1865, but were the fault of the defendant in not repairing the same, and to show further by competent evidence that it was within the power of the defendant company by the use of methods in use among canal engineers and canal companies as proper for maintaining canal banks to have prevented the same and that such methods were not attempted and were omitted. *Answer:* Refused as here stated. [10]

9. That in the erection, construction and maintenance of its banks the defendant company is not an insurer against percolations and seepage of water through the ground through which and on which it is erected, and such percolation must be

shown to be the result of gross negligence of the defendant company and not due to the ordinary and natural seepage of the land through which and out of which the canal is built (*x*) and there is no sufficient evidence showing that the percolations in question are not due to the natural conditions of the locality and ground in question, and are solely due to defendant company's negligence. *Answer:* This proposition is affirmed down to the cross marked therein. The remainder of the proposition is left to the jury to determine under the evidence. [11]

11. That it being shown by both plaintiff and defendant that the ancient drainage ditches are ample to carry off the flow drained into them from the canal, and it being the uncontradicted evidence that no water flows anywhere on plaintiff's land directly from the canal but into the said ditches, and from there it is inferred to seep through the southern said ditches and so reach the land in question; and there being no evidence that defendant ever had notice or knowledge of this particular condition of things or was required under its charter to change or maintain the said ditches wholly on land of plaintiff, as it appears: if the alleged damage arises in this way it is too remote, and the defendant company is not liable. *Answer:* Refused as here stated. [12]

Verdict and judgment for plaintiff for $497. Defendant appealed.

*Errors assigned* were (1) in permitting statement to be sent out to the jury; (2–4) rulings on evidence, quoting the bill of exceptions; (5–12) above instructions, quoting them.

*James Scarlet,* with him *L. E. Waller,* for appellant.—It was error to permit the statement to go out with the jury: Himes v. Kiehl, 154 Pa. 190; Indianapolis, etc., R. R. Co. v. Miller, 71 Ill. 463; Hatfield v. Cheaney, 76 Ill. 488.

Evidence of value of land was not admissible: Robb v. Carnegie, 145 Pa. 324.

The state in constructing this canal, and granting it to defendant, must be presumed to have intended its natural use under the operation of the natural laws of percolation and gravity, and that a way of escape for the water, following the

river gravel formation, through which the canal is built, must be " a way of necessity : " Penn. Coal Co. v. Sanderson, 113 Pa. 126.

*Grant Herring*, with him *W. H. Rhawn* and *Ikeler & Ikeler*, for appellee.

OPINION BY BEAVER, J., May 22, 1903 :

This case, as presented to the jury, by reason of sundry amendments before and at the time of trial, was the suit of Ida Welliver and J. C. Sponenberg to the use of Ida Welliver, against the Pennsylvania Canal Company, for the recovery of damages for the negligent maintenance and repair of the defendant's canal and its banks through the land of the plaintiff in such a negligent manner as to damage and injure the plaintiff, etc., during and since the year 1892.

The various assignments allege error in the admission of testimony, the answers of the court below to the points of plaintiff and defendant and the action of the court in permitting the plaintiff to send out a statement with the jury. Of these, in the order in which they are presented by the appellant.

1. The statement sent out with the jury. What was it? It is not with the record, nor is there anything in the record by which we can determine what it was. The court says : " The plaintiff desires to send out a statement with you. This statement is only to remind you of the subject-matter upon which they claim their right to recover. We send it with this instruction as to how you should regard it. Pay no further attention to it." Was it a calculation of damages? It does not so appear, nor is there anything in the record which enables us so to determine. In Himes v. Kiehl, 154 Pa. 190, the statement sent out with the jury was brought upon the record and plainly showed that it was a calculation of the damages sustained by the plaintiff, based upon an erroneous measure of damages. This appears not only by the statement itself, which is in the report of the case, but by the opinion of Mr. Justice GREEN which speaks of it as a calculation of figures, etc. The objection was well taken here we think, if the statement contained a calculation of the damages or a statement based upon the testimony of the plaintiff's witnesses, notwithstanding the caution

of the trial judge as to the effect which the jury should give to it.   It is not good practice in our opinion in an action of tort to send a statement of any kind with the jury, particularly in a case where the evidence is conflicting and where the claim for damages is simple and easily kept in mind by the jury.   In this case, however, we have nothing in the record which enables us to determine what the statement was.   The appellant could, by an exception taken at the time, have had the statement placed upon the stenographer's notes and thus brought upon the record for review.   It does not appear, however, that an exception was taken until after the jury had retired, the stenographer's notes showing that "after the jury retired and before verdict rendered, counsel for defendant asks for an exception to the charge of the court and answers to points, in so far as they are not affirmed (also in sending out a statement) and asks that the same be written out and made a part of the record," which was granted.   It is possible that a copy of the statement could have been brought upon the record under this allowance and, if so, the appellant could have had the record properly prepared to raise the question, but it was not done and we are, therefore, unable to determine that there was error in allowing it be sent out.

2. The second, third and fourth assignments relate to the evidence introduced by the plaintiff, under objection, as to the value of the land alleged to be damaged by the negligence of the defendant.   It is very true that the value of the land was not primarily the true measure of damages but it might become necessary to ascertain what the value of the land was in the ultimate determination of the damages sustained.   In Robb v. Carnegie, 145 Pa. 324, Lentz v. Carnegie, 145 Pa. 612, Eshleman v. Martic Twp., 152 Pa. 68, and Lucot v. Rodgers, 159 Pa. 58, it has been consistently held that in cases like the present the measure of damages is the cost of remedying the injury, unless such cost exceeds the value of the property injured, in which case the value of the property becomes the measure of damages.   In this view of the case, the testimony was clearly admissible and was admitted for that particular purpose, as indicated by the court, and it was especially pertinent, because the testimony of the plaintiff showed that the cost of remedying the injury complained of, if the plan proposed as

the only practicable one was carried out, would have cost more than the value of the land. It was, therefore, necessary for the jury to have the value of the land before them as the ultimate measure of damages, in case they believed the testimony of the plaintiff as to the cost of remedying the injury complained of.

3. The affirmance of the plaintiff's second point is assigned for error. That point is, "that, if the jury find from all the evidence, that, through the negligence of the defendant, the water was allowed to flow upon the plaintiff's land, it was not her duty nor the duty of her predecessor in title to construct or maintain a ditch to carry off the same, but only to use ordinary care and prudence in preventing continuing injury." We cannot say that, under the peculiar circumstances of this case, the affirmance of this point was error. It was the duty of the plaintiff to use all reasonable care, skill and diligence adapted to the occasion to remedy and arrest the injury, but it was not her duty to construct a ditch which would cost more than the value of her land, because, as already intimated, she could recover no more than the value of her land in any event and was not bound to expend more in preventing the injury than she could recover from the defendant. It is only under the peculiar circumstances of the case and by construing "a ditch" in the point to mean the ditch referred to by the plaintiff's witnesses—which we think ought in fairness to be done—that we are able to sustain the affirmance of this point.

4. The sixth and eighth assignments are based upon a misconception of the evidence. There was no complaint by the plaintiff that the injury of which she complained arose from the lack of proper repair in 1865, although there was some confusion in the cross-examination of one of the plaintiff's witnesses. The claim was consistent throughout that all the damages claimed were from and after the year 1892 and that they arose from a defective repair of the canal made in that year or the year previous thereto. Both of these points were affirmed but the affirmance thereof was very properly neutralized by the remarks of the court as to their lack of applicability to the case as it stood, and in this there was no error.

5. The same remark is true in a measure of the answer to the defendant's sixteenth point. The refusal is correct,

whether the reason therefor be convincing or not. It mattered little how the state maintained the banks of this canal. As a matter of fact, it appeared from the evidence that no complaint had ever been made prior to 1865, when a break occurred, and subsequently in 1891 or 1892, when another break occurred, the defective repair of which was the alleged cause of the injury complained of by the plaintiff. There was evidence that the land had been cultivated as late as 1889 and that a settlement had been made with the canal company by the father of the plaintiff, under whom she claimed, for all the damages which had occurred up to the year 1891. In addition to this, the provisions of the 6th section of the Act of April 21, 1858, P. L. 414, which provides that " the Sunbury & Erie Railroad Company, or their assigns, immediately after taking possession of the said canals, shall be bound to keep up the same, including public and private bridges crossing the said canals as heretofore done by the canal commissioners, in as good repair and operating condition as they now are," etc., would have been no justification on the part of the defendant in maintaining a portion of the canal which had been negligently maintained and operated by the state. No provision of that kind could have been intended or construed to take away the right of property owners to recover for negligence in the maintenance of the property.

6. It is sufficient to say, in reply to the ninth assignment of error, which has to do with the refusal of the court to the answer of the defendant's seventeenth point, that the point assumes as fact that which was expressly contradicted. The question as to whether or not the leakage or seepage from the canal constituted negligence, was, under all the facts of the case, for the jury. If the plaintiff's witnesses were to be believed, their testimony was abundantly sufficient to justify the jury in determining the fact of negligence against the defendant.

7. The defendant, in its fifth point, seems to ignore the testimony in the case. There was abundant evidence as to where the seepage or running of the water from the canal occurred. If the testimony of the plaintiff's witnesses was to be believed, it came in such quantity as to compel the inference of negligence and there was also evidence that the leakage could have been remedied or restrained by a puddling of clay which was

accessible and convenient. The trial judge, having affirmed the defendant's fourth point " that the percolation of water through the canal bank, at the point complained of, is not per se negligence, and it is incumbent on the plaintiff to prove, by competent evidence, that the defendant company has not exercised the ordinary care and skill required of it at this point, and that the want of such ordinary care and skill was the probable, proximate cause of the injury," had already given such general directions in regard to the principles involved in this case that there cannot be any legitimate complaint of the refusal to affirm the fifth point which immediately follows it.

8. The defendant's ninth point and the answer to it are as follows : " That in the erection and construction and maintenance of its banks the defendant company is not an insurer against percolations and seepage of water through the ground through which and on which it is erected, and such percolations must be shown to be the result of gross negligence of defendant company and not due to the ordinary and natural seepage of the land through which and out of which the canal is built (X) and there is no sufficient, evidence showing that the percolations in question are not due to the natural conditions of the locality and ground in question, and are due solely to the defendant company's negligence. Answer : This proposition is affirmed down to cross mark therein. The remainder of the proposition is left to the jury to determine under the evidence." This answer affirms the questions of law contained in the point and refers to the jury, what was undoubtedly within its province to determine, the sufficiency of the evidence in relation to the percolations through the soil and the defendant's liability therefor, by reason of its negligence. No well grounded complaint can be made in relation thereto.

9. The eleventh point does not contain statements of fact which were entirely uncontradicted. It is true that in the opinion of some of the plaintiff's witnesses the drainage ditches below the canal were sufficient to carry off the water which drained into them from the canal but others of her witnesses were equally decided that those ditches were not sufficient and that, by reason of their insufficiency, her land became saturated with water which rendered it practically valueless, and further, that in order to make them sufficient the cost would be more

than the value of the land. It was, therefore, impossible for the court to affirm that point and it was properly refused.

It is somewhat significant that there is no exception to any portion of the charge of the court below. The legal questions were fully discussed in that charge and the general propositions relating to the plaintiff's right to recover and the defendant's liability were clearly and fully stated, quite as strongly as defendant had a right to ask. Taking the general charge and the answers to points together, we cannot see that the jury could be in doubt as to the legal questions involved in the case. It became, therefore, so far as they were concerned, simply a question as to the credibility of the witnesses and the relative weight of the evidence on the part of plaintiff and defendant, and whatever may be our opinion as to the amount of this verdict, we cannot, as the case stands, invade their province.

The judgment is affirmed.