# Cairns *v.* Chester City, Appellant.

*Municipalities—Sewers—Negligence—Contributory negligence—Waters —Evidence—Province of court and jury.*

In an action of trespass against a city to recover damages for injuries resulting from the flooding of a cellar, the plaintiff cannot be charged with contributory negligence as a matter of law, where it appears that the plaintiff connected his premises with the city sewer under lawful authority from the city, and that for several years after the connection was made, the work of drainage went on undisturbed, leaving the cellar dry, and easily cleaned.

Where a municipality in the exercise of its rightful powers has constructed a public sewer, it assumes the duty of maintaining it in a reasonable state of efficiency, and a failure to discharge such duty is an act of negligence, and will subject the municipality to an action for damages by a citizen whose property has been injured by reason of such failure.

In an action against a city to recover damages for injuries resulting from the flooding of a cellar, the case is for the jury where the plaintiff shows that he connected his premises with the public sewer under authority from the city; that for several years the drainage was effectual;

that later the water began to back into his cellar; that these occurrences became more and more frequent; that he repeatedly gave notice to the borough authorities without obtaining any relief and that finally, it appeared, that the sewer had been allowed to become so choked with sand and dirt that its volume and efficiency were greatly diminished thereby.

In such a case where the defendant claims that the injuries were the result of the action of tides in a tidal river into which the sewer emptied, but the evidence shows that only under infrequent weather conditions, when heavy rain storms and unusual tides happened at the same time, was damage done to plaintiff's premises, the defendant cannot complain of the verdict against it, if it appears that the court carefully instructed the jury that there could be no responsibility for injuries suffered by the action of the tides or forces not under the control of man.

*Municipalities—Negligence—Sewers—Damages—Measure of damages.*

In an action against a city to recover damages for injuries to a dwelling house caused by flooding from a broken sewer, the owner who is in the occupancy of the house, is entitled to recover for injuries affecting the structure itself, and also for the temporary destruction or diminution of the use value of the house; and the owner cannot be deprived of his damages for diminution in the use value of the house for six years prior to the bringing of the action, although the injuries began more than six years before the action was brought.

Argued Nov. 22, 1906. Appeal, No. 204, Oct. T., 1906, by defendant, from judgment of C. P., Delaware Co., June T., 1903, No. 136, on verdict for plaintiff in case of Andrew Cairns v. The City of Chester. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for injuries to a dwelling house alleged to have been caused by the flooding of the cellar of the house by water from a sewer. Before JOHNSON, P. J.

The court charged in part as follows:

It appears that the plaintiff lives on Second street, in the city of Chester, at the corner of Ward and Second, and owns two small brick houses, stores; some time about 1888 or along there he built the first of these houses; in 1891 he built the other; and that prior to that time the city of Chester had constructed a sewer on Second street which ran from his place westward to Townsend street and down Townsend street to

the Delaware river. He connected his house or cellar with this sewer on Second street by means of a pipe leading from the cellar (six-inch pipe I believe) to the sewer, and in that pipe he left a hole in the cellar, three inches across. His complaint is that by reason of the negligent maintenance of that sewer the water backed into his cellar through the pipe— through this hole, and injured his house, injured the walls of the house, so that it cracked, and depreciated its value by lowering the rent in the one house that he rented, and by preventing his using the cellar in the other. That is his claim. Now, the first question we shall submit to you is, whether or not in the construction of this pipe leading from the cellar to the sewer; whether in its reasonable and proper construction that hole should have been left in the pipe?

If you shall find that that was not necessary in its reasonable and proper construction and that he would have suffered no damage if that hole had not been there, that is the end of the plaintiff's case and he cannot recover, and your verdict will be for the defendant; and in passing upon that question we do not intend to restrict you to any particular witness. You have heard the plumbers. You have heard those who are familiar with the uses to which that hole was to be put, and if you shall find from all the evidence that in the reasonable and proper construction that was not necessary and that he would have suffered no damage if that hole had not been left there, then you shall find for the defendant, because, in the court's view, that being found in the city of Chester's favor he cannot recover.

But if you pass that question and find from all the testimony in the case that in the reasonable and proper construction that hole was properly there, and that through it the water came and it injured his property, then pass to the next question. If you shall find that the water which flowed into the plaintiff's premises was because of the inflow of the tide, of the water from the Delaware river, and find that this sewer was in proper order and condition, or, in other words, find that the dirt or mud which was in the bottom of it in no way affected that flow, then your verdict must be for the defendant, for in the court's view of the case, that if the flow of the water into his cellar came from the tides, caused wholly and

entirely by the tides, and was not affected in any way by reason of this earth or dirt in the sewer, then your verdict must be for the defendant, and you need go no further, but if you find from the evidence that that was not the cause of it then you will pass to the next question.

The claim of the plaintiff is, and the only claim in which we think he can maintain his suit, that this injury to the plaintiff, to his buildings, was caused by the failure of the city of Chester to keep the dirt cleaned out of this sewer, and the theory of the plaintiff is that this injury was caused by the filling up of the sewer opposite his place so that when the water during a rain, ordinary rain storm, flowed into the sewer that the sewer was so nearly filled up with the water, filled up passed the aperture where he joined on to the drain pipe, and flowed the water back into his cellar. If you shall find from all the evidence in the case that that was the cause of it, and that that cause was by the failure of the city of Chester to keep this sewer cleaned out (because it was the duty of the city to maintain it in good order for the purpose for which it was to be used), if that was the cause of this flow of water into his cellar—if you find that it was, then pass to the next question. What will compensate him for the injury? [ Now, he is entitled, if you find that he was damaged by reason of the neglect of the city of Chester, that is, the failure to maintain this sewer in a proper condition—if you find that he was injured by that or his property was, then we will instruct you that he was entitled to recover, first, whatever he may have lost by the depreciation of the rent in the one house, and whatever the depreciation was for the loss of the cellar in the other, because there was no rent from that.

Now, upon this question of rent. We do not intend to intimate what it should be. You have heard the witnesses—the difference between what it would have brought if it had been in the condition it would have been if the sewer had not been there, and the condition that it was made by the sewer, if it was changed and whatever that difference is this plaintiff will be entitled to recover from July 17, 1897, until to-day. Now, there is some dispute about the (as you will notice) depreciation caused by this cellar being wet—some contradiction of the testimony about the amount of rent he did receive some time in

1897. Take all the testimony, and he will be entitled to receive whatever that difference will be.] [11]

[Then it is also claimed that the building has been damaged; that the water in the cellar undermined in some way or another the walls of the building, and that they settled and cracked the front of the building fronting on Second street, one of the buildings. I am not sure whether both or not.

Mr. Geary: I think he said both buildings.

The Court: He claims that by reason of the water in the cellar that it undermined or affected the foundations of the buildings and that the walls settled and cracked the front of his building, and he claims to be compensated for that. Now, the evidence upon that point is very contradictory. And you will pass upon that question. First, whether or not there was any settling of the walls, and, if so, did they cause this crack in the building? Whatever will be necessary to compensate him for the damage done to that building, he is entitled to it.] [12]

Defendant presented these points:

2. If the injury to plaintiff's property resulted from water from the sewer backing on to or flooding it through or by reason of the connection from it to his property, the city is not liable and your verdict should be for the defendant. *Answer:* We answer that if the injury resulted entirely from the action of the tides, and the sewer was properly maintained, this point is affirmed. In other words, if this sewer was properly maintained and this injury to the plaintiff arose entirely from the tides, than the plaintiff cannot recover, and your verdict must be for the defendant. [1]

3. If the plaintiff's cellars were flooded from the sewer through the connection prior to six years before suit brought, the same was notice to him, and he thereafter retained the connection at his own risk, and the verdict must be for the defendant. *Answer:* That is refused. We cannot say to you that because he did not bring his suit as soon as he discovered it that he is not entitled to recover. The fact, if it be a fact, that he did not bring this suit for ten or twelve years after he had noticed it you may take into consideration in passing upon the question whether or not he has been damaged and whether he has been damaged in the way he says he has. [2]

4. Neither the borough of South Chester nor the city of Chester, the municipalities wherein the plaintiff's property has been located since they were constructed in 1888 and 1891, required or compelled the said plaintiff to connect his cellar with the said sewer, or to maintain said connection; the said connection was, therefore, permissive only, and at the risk of the said plaintiff. *Answer:* Much of that we might affirm, but we cannot say that it was at the risk of the plaintiff. Therefore, it is refused. [3]

5. The connection from the plaintiff's cellar to the sewer was permissive only, and the said cellar having been flooded prior to six years before the institution of this suit and as such flooding was sufficient notice to the plaintiff that his property was likely to be injured if he still maintained it, his maintenance of it thereafter was at his own risk, and the defendant is not responsible or liable for any damages that happened after such first flooding. *Answer:* That is refused. [4]

7. The only damages the plaintiff is entitled to recover in this case, if he is entitled to recover any, are the cost of closing the connection or opening from his cellar through to the pipe that led into the sewer, the cost of a vent box at the curb, and possibly the cost of cementing the cellar of the house on the corner, and any other incidental and necessary expenses arising and growing out of the closing of said connection and hole. *Answer:* That is refused. [5]

8. Under all evidence the verdict should be for the defendant. *Answer:* The eighth point is refused, too. [6]

Verdict and judgment for plaintiff for $813.20. Defendant appealed.

*Errors assigned* were (1–6, 11, 12) above instructions, quoting them.

*A. A. Cochran*, for appellant.—The flooding was mainly due to the forces of nature, and, therefore, it was an act of God. In any aspect it was damnum absque injuria: Berninger v. Sunbury, etc., Ry. Co., 203 Pa. 516; Taylor v. Canton Twp., 30 Pa. Superior Ct. 319.

It is the duty of a party injured by a breach of contract or tort to make reasonable effort to avoid damages therefrom, and

such damages as might by reasonable diligence upon his part have been avoided are not to be regarded as a natural and proper result of the defendant's acts. There can be no recovery, therefore, for damages which might have been prevented by reasonable efforts on the part of the party injured : Chamberlin v. Morgan, 68 Pa. 168 ; R. R. Co. v. Luckie, 87 Ga. 6 (13 S. E. Repr. 105).

There is extensive authority for the position that in a case of this kind the measure of damage is the cost to the plaintiff of obtaining relief, if it can be obtained. If not, then the measure would go to his loss. At least, he must make a reasonable and proper effort for relief before he can claim to be paid for his full loss : Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194 ; Eshleman v. Martic Twp., 152 Pa. 68 ; Elder v. Lykens Valley Coal Co., 157 Pa. 490 ; Mellick v. R. R. Co., 203 Pa. 457 ; Talley v. Courter, 93 Mich. 473 (53 N. W. Repr. 621) ; Galveston, etc., R. R. Co. v. Becht, 21 S. W. Repr. 971.

*A. B. Geary*, for appellee.—If the flooding of the cellar was caused by improper construction of the sewer or permitting it to become obstructed, the defendant is liable : Vanderslice v. Phila., 103 Pa. 102 ; Haus v. Bethlehem, 134 Pa. 12 ; Allentown v. Kramer, 73 Pa. 406 ; Blizzard v. Danville Boro., 175 Pa. 479 ; Owens v. Lancaster, 182 Pa. 257 ; Gift v. Reading, 3 Pa. Superior Ct. 359 ; Boehm v. Boro. of Bethlehem, 4 Pa. Superior Ct. 385 ; Cooper v. Scranton City, 21 Pa. Superior Ct. 17.

If the tide did interfere with the flow of the water, and that should be considered an act of God, and the negligence of the defendant concurred with that act of God in producing the injury, the defendant was liable, and the question was for the jury : Helbling v. Allegheny Cemetery Co., 201 Pa. 171 ; Siegfried v. South Bethlehem Boro., 27 Pa. Superior Ct. 456 ; Toole v. Del., Lack. & Western R. R. Co., 27 Pa. Superior Ct. 577.

The burden of proving contributory negligence was on the defendant, and the question was not so clear that the court could have given binding instructions for the defendant : Baker v. Westmoreland & Cambria Natural Gas Co., 157 Pa. 593.

The plaintiff surely had the right and was justified in as-

suming that this sewer would be cleaned: Penna. R. R. Co. v. Werner, 89 Pa. 59; Thomas v. Kenyon, 1 Daly (N. Y.), 132; Pittsburg v. Grier, 22 Pa. 54; Spangler v. San Francisco, 84 Cal. 12; Barton v. Syracuse City, 37 Barbour (N. Y.), 292; Phila. & Reading R. R. Co. v. Hendrickson, 80 Pa. 182.

The case which rules the one under consideration is Gould v. McKenna, 86 Pa. 297.

Where an injury in such cases is not permanent, the measure of damages is the cost of restoring the property to its former condition, together with compensation for the loss of its use and of rental: Helbling v. Allegheny Cemetery Co., 201 Pa. 171; Gift v. City of Reading, 3 Pa. Superior Ct. 359; McCartney v. Phila., 22 Pa. Superior Ct. 257.

OPINION BY HEAD, J., October 7, 1907:

Unless the learned trial court erred in declining to hold, as matter of law, that the plaintiff was guilty of contributory negligence, there is no just ground for criticism of the manner in which that question was submitted to the jury. If the existence of such negligence could be fairly inferred from any fact or facts developed in the testimony, such inference must have rested on the theory (a) that the plaintiff had no legal right to connect his premises with the sewer, leaving an opening in the connection to drain his cellar and vent waste water therefrom; or (b) that, conceding his right to the use of the sewer, he had constructed or maintained his connection in an unusual, unskillful and negligent manner, and thus caused, in whole or in part, the injury of which he complained. But in urging the adoption of either of these theories the defendant is confronted with testimony sufficient, if believed by the jury, to establish the following facts. The sewer was built by the borough and part, at least, of the cost assessed on the abutting properties, including the plaintiff's. The defendant then, by general ordinance, authorized its use by property owners, regulated the manner of such use and, in consideration of the payment of a license fee, issued formal permits to citizens desiring to connect with the sewer. The plaintiff paid his fee and received his license. There was nothing in the ordinance or license prohibiting any use to which the plaintiff has subjected the sewer. The system of drainage adopted was designed and

constructed by a plumber and was not different in plan or workmanship from those in current use by other citizens. If, as we say, the jury accepted the evidence tending to establish these facts, it ought to be clear enough that this case is substantially different from Dasher v. Harrisburg, 20 Pa. Superior Ct. 79, cited and relied on by the learned counsel for appellant. In that case, "the plaintiff's predecessor in title had connected the premises owned by the plaintiff with the sewer in violation of city ordinances which required the consent of the city authorities to be first obtained, the payment of a fee for the privilege of connecting, and that the construction shall be done under the supervision of the city engineer." We note in the printed argument for the appellant the following statement: "In this case it was shown that there was no ordinance or resolution of council of the borough of South Chester providing for the authorizing of or permitting property owners to connect with public sewers." We must regard this as an error into which counsel inadvertently was led because we find in the record, "An ordinance relating to the streets, to tap for either sewer or water," approved October 8, 1888, in which it is provided that, "all property owners of the said borough who tap the water pipe or sewer will be required to have the street put in as good condition as they found it in six days," etc. Another ordinance approved October 13, 1890, provided, inter alia, "any person desiring to make sewer connections (on Second street) shall pay to the street commissioner a sum equal to one dollar per square yard for the pavement desired to be removed," etc. No ordinance on this subject older than the one first quoted seems to have been offered in evidence, although the record shows that a sewer license No. 77, was issued on September 16, 1887, to the plaintiff's contractor for which a fee of $1.50 was paid.

But beyond all this, it was shown by evidence, practically undisputed, that for several years after the plaintiff's premises were connected with the sewer, the work of drainage went on undisturbed, leaving his cellar dry and easily cleaned. From this a jury might fairly infer that the proximate cause of the floodings and consequent damage, which later began to happen, was not any fault in either the design or the workmanship of the plaintiff's connection, but should be looked for elsewhere.

Upon such a state of facts we are unable to point to any rule of law or fixed standard of legal duty, imposed by statute or declared by judicial decision, of which the plaintiff's conduct could be clearly said to be a violation. This being so the court could not have rightfully declared, as matter of law, that plaintiff had been guilty of contributory negligence and the submission of that question to the jury, in a proper charge, left the appellant without just cause for complaint.

Whilst the construction of public sewers, to promote the health and comfort of the citizens, is a municipal function for the exercise of which ample powers have been given to our cities and boroughs, yet it has ever been held that the time when and the conditions under which such powers should be exercised are questions to be determined exclusively by the municipality itself. It follows that the citizen can have no cause of action against his local government because it has not provided a sewer to carry off surplus water, sewage, etc., the presence of which is detrimental to his property. But it is equally clear that having, in the exercise of its rightful powers, constructed a public sewer, the municipality assumes the duty of maintaining it in a reasonable state of efficiency, so that the public moneys expended in its construction may not be wasted, and what was designed for a public benefit be permitted to lapse into an injurious or dangerous nuisance. A failure to discharge that duty is an act of negligence and will subject the municipality to an action for damages by a citizen whose property has been injured by reason of such failure. The many cases declaring this principle are so well known they need not be cited here.

It was on precisely such an alleged breach of duty that the present plaintiff planted his right to recover. To sustain his claim he showed the facts already adverted to as to the construction of the sewer, his connection with it and the good service it rendered for a considerable period of time. That later the water began to back into his cellar ; that these occurrences became more and more frequent; that he repeatedly gave notice to the borough authorities without obtaining any relief and that finally, it appeared, that the sewer had been allowed to become so choked with sand and dirt that its volume and efficiency were greatly diminished thereby. Upon this state of facts he

asked the jury to find that his damages were the result of the failure of the borough to perform its legal duty in maintaining the sewer in proper condition. The facts being established by the verdict, unless some intervening and adequate cause for the injury were shown, the conclusion reached by the jury could not be said to be either unreasonable or unwarranted.

The defendant stoutly contended before the jury that it had found such a cause in the action of the tides in the Delaware river into which the sewer emptied. Much testimony was produced to support this contention. But there was also evidence tending to show that only under infrequent weather conditions, when heavy rain storms and unusual tides happened at the same time, did damage come to the plaintiff from such causes. Besides, during the years when there was no trouble and no injury, these natural forces were operating under the same laws that later controlled their action. The jury might, therefore, decline to accept the defendant's claim that the damage suffered by the plaintiff was wrought by an act of God rather than a breach of duty by the municipality. The learned trial court carefully instructed the jury that no person could be held responsible for injury suffered by the action of the tides or forces not under the control of man, and no fault can be found, from the standpoint of the defendant, with the charge in this respect.

There remains to be considered the assignments which attack the correctness of the charge as to the measure of damages. The verdict having established, after a fair submission of the questions, that the defendant was negligent in permitting its sewer to become choked with sand and dirt; that this negligence was the cause of the injury complained of and that the plaintiff was free from contributory negligence, what was the proper measure of the latter's recovery? Undoubtedly compensation, or in other words the restoration of his property to its former condition—if it could be so restored for less than its value—plus the money lost by him by reason of his inability to use and occupy it during the period of injury as shown by the pleadings and evidence. The learned trial court, as we understand his charge, instructed the jury that the cost of repairing cracks in the wall, washed-out mortar joints, etc., if injured by the negligence of the defendant within six years, would measure the damage to the building; whilst the loss of rental value

attributable to the same cause, would fairly measure the damage to the plaintiff's right of use and occupation. As there was testimony tending to prove both kinds of injury, viz.: temporary, destroying or diminishing the use value; permanent, affecting the structure itself, we are unable to see in what other way compensation could have been brought about. Had the cellar been occupied by a tenant, he could have maintained an action for the one injury, the owner for the other. That the owner was also the occupier ought not to change the measure of the defendant's liability. The rule thus laid down we regard as in entire harmony with the principles announced in Eshleman v. Martic Township, 152 Pa. 68; Elder v. Lykens Valley Coal Co., 157 Pa. 490, and kindred cases cited by appellant. Nor can we accept the doctrine, so earnestly urged by appellant, that because the injury began more than six years before the bringing of this action, and because the plaintiff did not then find and adopt some means of stopping it, even if that involved the closing of his cellar vent and the cutting out of his rain spouts, he must now be regarded as the responsible author of his own injury. True, the defendant could have, by general ordinance, prescribed any fair and reasonable methods for connecting with the public sewer and forbidden its use in other ways. It did not do so. The manner of the plaintiff's use has not been found to be unlawful, unusual or negligent. He may not at first have known the cause of his injury. He may have relied, as he had the right to rely, on the assumption that the negligence would cease. If from one or both these reasons he bore his injury during some years for which he cannot recover by reason of the statute, we cannot discover, in this fact, any reason why he is now remediless. The assignments of error are all overruled.

Judgment affirmed.