## Wally et ux. *v.* Baldwin, Appellant.

Argued April 10, 1928. Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*D. W. Marsh,* of *Marsh & Eaton,* for appellant.— The cost of constructing a retaining wall to prevent future injury to real estate is not a proper measure of damages for injuries which have already occurred: Bare v. Hoffman, 79 Pa. 71; Duffield v. Rosenzweig,

144 Pa. 520; Hoffman v. Millcreek Coal Co., 16 Pa. Superior Ct. 631; McCartney v. Philadelphia, 22 Pa. Superior Ct. 257.

*Charles F. Haughney,* for appellee.—The measure of damages for trespass to real property is the cost of remedying the injury, unless that exceeds the value of the property injured, when such value becomes the measure: Welliver v. Pennsylvania Canal Co., 23 Pa. Superior Ct. 79; McKnight v. Denny, 198 Pa. 323; Eshleman v. Martic Township, 152 Pa. 68; Hutchinson et al. v. Schimmelfeder, 40 Pa. 396.

OPINION BY CUNNINGHAM, J., July 12, 1928:

The action below was trespass for injuries to real estate. A non-suit was entered as to two of the plaintiffs, Frank and Magdalena Wally, and a verdict rendered in favor of their co-plaintiffs, Anthony and Rose Wally. The verdict in their favor, supported as it is by evidence, established the fact of injury. The only substantial question involved under the assignments of error filed by the defendant in support of his appeal from the judgment entered upon the verdict, after his motions for a new trial and for judgment n. o. v. had been denied, is whether the court below in admitting certain offers of evidence and in its charge to the jury adopted a correct measure of damages. From the evidence these material facts appeared: in 1916 plaintiffs purchased a lot at the southwest corner of State and 24th Streets in the City of Erie, fronting 40 feet on State Street and extending westwardly along the south side of 24th Street 165 feet, with a width in the rear of 51.85 feet. Across the rear end of this lot they built a bungalow in 1917 at a cost of about $7,000, the western side of the building, approximately 50 feet in length, being eight feet from the rear line of the lot.

In 1922 George D. Baldwin, the defendant, became

the owner of a lot on the east side of Peach Street (a north and south street parallel with State Street and 330 feet west thereof), located 30 feet south of 24th Street, with a frontage of 69.7 feet, and extending eastwardly, of equal width, 165 feet, the resulting situation being that these lots abut upon each other for a distance of 21.85 feet in the rear of each lot. Peach Street is laid out along the top of a bluff and its elevation is 41 feet above that of State Street. Passing from the front of defendant's lot eastwardly toward State Street, the surface is approximately level for about two-thirds of its length and then comes a steep descent, at a grade of about 50 per cent., to and across the dividing line between the northern portion of defendant's lot and the southern 21.85 feet of plaintiffs'.

In 1922 defendant began the erection of several small apartment houses on the front portion of his lot and in excavating for their cellars a part of the excavated material was piled along the top of the bank in the rear of the new buildings, thereby extending the level portion of defendant's property eastwardly and making the descent to plaintiffs' property more precipitous. Prior to these building operations by defendant the slope toward plaintiffs' property had been covered with vegetation and small trees and bushes. The testimony for plaintiffs indicates that during the five years intervening between the building of their house and the depositing of the excavated materials by defendant they had suffered no inconvenience from water flowing, or debris of any kind falling, down the slope, but that shortly thereafter the dirt, loose stones and other debris deposited by defendant at the top of and along the descent began to fall and wash down upon plaintiffs' property. The nature and extent of the injury was thus described by the plaintiffs: "Q. When would the dirt come down? At what time particularly on to your land and house? ....... A. After

a frost or heavy rain a lot of dirt would come down and run into the cellar windows, and we would have to always shovel it back. Q. What inconvenience, if any, did that cause in your cellar? A. Flooded the cellar, rolled the dirt in, and plugged up the sewer a couple of times. Q. What if any damage did stones do? A. One of them went right through the cellar window when it came down the hill. Q. Inside of the cellar? A. Yes. Q. What if anything did it do to your walk? A. When that big one came down it landed on the walk and cracked it. Q. What if any change did you notice in the dampness or water in your cellar after Baldwin made this excavation there? A. After the water run in we had to clean up down there. Q. What if any change in the dampness of the cellar was there? Where did the water come from? Through the walls? A. And through the cracks in the cellar window.'' Plaintiffs testified that from seventy-five to one hundred stones came down, some of them weighing many pounds, and that several windows in bedrooms were broken. After the institution of the suit defendant constructed upon his side of the dividing line a retaining wall of gravel, mixed with some cement, but there is evidence on behalf of plaintiffs that this wall is constructed in a faulty manner and is insufficient to protect their property. At the trial it was correctly ruled that plaintiffs could not recover for any damages suffered subsequent to March 26, 1923, the date of bringing suit. The controversy is over the proper measure of plaintiffs' damages for the injuries sustained up to that time. Plaintiffs offered no evidence with respect to the cost of removing the debris deposited upon their property, reopening their sewer, replacing broken windows or repairing the injuries caused by the flooding of their cellar. It appeared indefinitely in the testimony that plaintiffs rented the upper story of their house and that the conditions complained of

made it more difficult to obtain tenants. Defendant's position was that the measure of damages was the cost of restoring the property to its former condition and as this cost had not been shown there could be no recovery. Over the objection of counsel for defendant, plaintiffs were permitted by the learned trial judge to show by several witnesses, experienced in cement work, that a practical way of protecting plaintiffs' property from further injury would be the construction of a cement wall, twenty-two feet long and eight feet high, along the dividing line between the respective lots, and that the cost of such a wall would be from $465 to $490. Plaintiffs' contention was that the verdict "should be in such amount as will compensate them for the cost of erecting a retaining wall."

After charging the jury with respect to the other issues arising under the testimony, the learned trial judge in giving the jury the measure of plaintiffs' damages, if they found in their favor, said: "In a case of this kind, where a plaintiff can recover, the measure of the damage is the cost of restoring the property injured to its former condition. If the Wallys have been damaged, what is the cost of restoring the Wally property to its condition before this fill in the back of the Baldwin lot, if, in fact, that lot was filled? The question in this case is not what it would cost to put up a concrete wall. The evidence as to the cost of a concrete wall we understand merely to be some evidence of the amount of that damage. You have three witnesses who tell you that a concrete wall will prevent further injury to the property and in fact will restore the Wally property to its condition prior to this alleged act of Baldwin's, and on that question you have the testimony of three witnesses who tell you that an adequate wall in this situation would cost from $465.00 to $490.00. As I say, we are not attempting to determine on any view of the case the cost of a retaining wall, and that evidence is only before you,

as we understand the law, as being some evidence of the measure of damages as to how much the plaintiffs have been damaged, if you accept their theory of the case." The verdict shows conclusively that the jury understood these instructions (whether so intended by the trial judge or not) to mean that it could adopt the cost of building the kind and size of wall suggested by plaintiffs' witnesses as the measure of their damages for the injuries they had suffered up to the date of bringing suit. It reads: "October 13, 1927. The jury say they find judgment for the plaintiff the amount of the price of a retainance wall not less than 6 ft. high above the ground and length of his property 21 85/100 ft. The jury say they find for the plaintiff $475.00."

Upon a review of this record a majority of the members of this court are of opinion that the jury was permitted to adopt an erroneous measure of damages. It is clear, under the testimony, that the injuries to plaintiffs' real estate are not permanent; that the cost of remedying them is much less than the value of the property injured; and that this is a case of consequential injuries resulting from something done off the plaintiffs' land which may or may not be continued. If the defendant corrects the conditions causing the injuries—which he can do without trespassing upon the plaintiffs' land—they will cease, but in the meantime plaintiffs may maintain successive actions for such injuries as may be done to their property. In its controlling features this case is comparable to the case of Hoffman v. Mill Creek Coal Company, 16 Pa. Superior Ct. 631, in which the plaintiff sought to recover damages for injuries to his land caused by the deposit thereon of considerable quantities of culm and coal dirt from a stream into which the defendant had permitted such debris to be carried. In the opinion in that case our late President Judge Rice reviewed the authorities establishing the measure of damages

applicable to such injuries and nothing can profitably be added to what is there said. After a recital of the facts in that case, the opinion continues: "Prima facie the measure of damages would be the cost of removing the deposits and putting the premises in as good condition as they were before, if that could be done, and compensation for the total or partial loss of the use and enjoyment of the premises in the meantime." In a number of cases substantially this language is found: "For an injurious trespass, the measure of damages is the cost of remedying the injury, unless that equals or exceeds the value of the thing injured, when such value becomes the measure": Lentz v. Carnegie Bros. and Co., 145 Pa. 612; Robb v. Carnegie Bros. and Co., 145 Pa. 324. See also Eshleman v. Martic Township, 152 Pa. 68; McCartney v. Phila., 22 Pa. Superior Ct. 257; and Welliver v. Penna. Canal Co., 23 Pa. Superior Ct. 79. The phraseology of the above quoted excerpt from the charge seems to indicate that the learned trial judge had in mind the charge of FRAZER, J., then sitting in the Common Pleas of Allegheny County and now Mr. Justice FRAZER of the Supreme Court, delivered in the case of McKnight v. Denny and approved by the Supreme Court in a per curiam opinion in 198 Pa. 323. The facts and issues in that case, however, were quite different from those in the case at bar. There the plaintiff owned a lot on a hillside immediately below one owned by the defendant. Plaintiff being about to build a house on her lot and intending to construct one of the walls of brick and defendant being engaged in filling in his lot, a conversation was had between their representatives in which plaintiff alleged it was agreed that the wall should be made stronger and constructed of stone and that defendant would pay plaintiff the increased cost of such construction. The defendant having failed to keep his part of the alleged agreement, an action was brought

by plaintiff for damages sustained by her through the filling in of defendant's lot. One of the items of damage claimed was the additional cost of the wall. Under these circumstances the trial judge said in the course of the charge: "The other claim is the construction of the wall made necessary by the filling in done by Mr. Denny. You will bear in mind that this is not an action to recover for the cost of building that wall, the cost of the wall is merely some evidence which you gentlemen may consider in determining the damages sustained. It is not an action to recover the price of the wall and the claim is not based upon the agreement between Mr. Aull, representing Mr. Denny, and Mr. McKnight, representing his mother, that Mr. Denny would pay a portion of the entire cost of the wall. We admit that testimony merely as evidence of what the parties considered or might have considered as a fair compensation for damages sustained by Mrs. McKnight; plaintiffs' claim is that this wall was made necessary by the filling in above, and that Mr. Aull and Mr. McKnight, having had a conversation in regard to the matter, agreed that the wall should be strengthened. ....... and the plaintiffs claim that that agreement fixed the amount of the damages which Mrs. McKnight had sustained or would sustain by reason of this filling." The jury was further instructed that, if they did not find such agreement had been made, they should fix such damages as would compensate the plaintiff for the additional cost she was put to in the construction of her house by reason of the filling in of his lot by the defendant. No such agreement was set up in this case and the McKnight case is not authority, under the circumstances here existing, for the admission in evidence of the probable cost of building the concrete wall suggested by plaintiffs' witnesses, or for saying to the jury that the cost of such wall would "be some evidence of the amount of that [plaintiffs'] damage." Obviously the

only purpose of a retaining wall would be the prevention of future trespasses; it could not remedy those for which the plaintiff was then entitled to recover. Whether the conditions which brought about the injuries to plaintiffs' property shall be continued or corrected is primarily a matter for the consideration of the defendant in view of his liability to successive actions. The first, second, third, fifth and ninth assignments are sustained.

The verdict having established that plaintiffs have been injured, but it also appearing from the record that the case was tried and submitted to the jury upon an erroneous measure of their damages, a new trial should be awarded.

The judgment is reversed with a venire.