## Gehman *versus* Erdman.

1. Where an easement is granted, to be exercised within certain limits, and the grantor openly exercises a privilege in excess of the limit continuously and without interruption for twenty-one years under claim of right, the law may presume a second grant superadded to the first, covering the larger right.

2. A. was the grantor of a right to maintain a dam which would raise the water in a certain stream four inches above a designated rock. In 1843 he constructed a dam which was maintained at the same height continuously until 1880, when suit was brought to recover damages for backing up the water. The court charged the jury: "In considering the question as to whether the defendant acquired a right by prescription, you will inquire whether at any time since 1843 there has been twenty-one years at a stretch, that the owners of the mill swelled the water up higher than what is shown by the four inches above the stone . . . . . If you come to consider that part of the case you will inquire : Where is the testimony of the witnesses to show that for twenty-one years, at any time since 1843, there was a use of this water so as to swell it back over the four inches? If you do not find such evidence you will say that under no consideration is the title by prescription established."

   *Held*, that this was error. The depth of water in such a basin is necessarily inconstant and variable. If the defendant, or those under whom he claims for a period of twenty-one years before suit brought, under a claim of right, openly, continuously, and uninterruptedly maintained his dam of the same height, whilst the owner of the lands farther up the stream was under no disability to resist the use, the law would presume a grant of the right to maintain it.

3. Where the testimony is voluminous and the jury would naturally rely upon and be largely influenced by the impressions received from the rehearsal of it by the court, it is important that the *résumé* shall be as full on one side as the other, so that the jury may not be misled.

February 19, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lehigh county :* Of July Term, 1883, No. 134.

This was an action of trespass on the case by Enos Erdman and Jacob Geisinger against Solomon Gehman, to recover damages for backing up the waters of a certain stream, thereby impeding the operations of the plaintiff's mill. Plea, not guilty.

The material facts of the case, as they appeared on the trial,

[Gehman v. Erdman.]

before ALBRIGHT P. J., together with a portion of the charge of the court, and the matters assigned for error, are fully set forth in the opinion of this court.

*R. E. Wright & Son*, for the plaintiff in error.

*John Rupp* (*C. J. Erdman* with him), for the defendants in error.

Mr. Justice CLARK delivered the opinion of the court, April 7, 1884.

The plaintiffs below, Erdman and Geisinger, are the owners of a water-power grist mill, located upon a small creek in Centre Valley, Lehigh county; Solomon Gehman, the defendant below, is also the owner of a mill upon the same stream, a short distance below that of the plaintiffs. The injury alleged, and for redress of which this action on the case is brought, is, that the reservoir or mill dam of Gehman floods the water of the stream back upon the wheel of the plaintiffs' mill, injuriously impeding its operation, detracting from its power, and diminishing its value.

It would appear that both mills, with some seventy-three acres of land connected therewith, were originally owned by John Romig, who, in the year 1818, sold and conveyed the entire property to Christian and Peter Young; they, in the same year, made an amicable partition of the property, by the terms of which Peter Young held, in severalty, the upper mill, with forty-two acres of the land, and Christian Young, the residue of the tract with the lower mill and the water course.

In the year 1843, whilst John Burger held the title and possession of that part of the premises allotted to Peter Young, and John Behringer of the part allotted to Christian Young, the dam at Behringer's mill was destroyed in a freshet; it was rebuilt however in the same year, and the structure now upon the ground, is the dam which was built in 1843.

The plaintiff contended and introduced evidence to show that before the dam was rebuilt, Burger and Behringer agreed to be governed in their use of the water by the same agreements which had existed, in parol, between their predecessors in title, Peter and Christian Young; and for ascertainment of the terms thereof, Peter and Christian Young, at their request, formulated a writing, which declared the particular terms and conditions of the parol agreement, by which they had been regulated in the use of the stream during the period of their ownership. By this writing it is declared, that in the year 1818 it was agreed that Christian Young, his heirs and assigns,

should "have a full and uninterrupted right and privilege to raise the water in the said stream, by a dam of four inches over and above a certain rock lying across the tail race or lower race on the land of Peter Young; the said rock is a sandstone, the upper surface resembles a roof of a house; that is to say, when both mills are stopped it shall not exceed four inches." This declaration was formally made and reduced to writing by the Youngs, in the year 1843; it was under oath, was duly acknowledged and recorded in the office for recording of deeds, in Lehigh county; the dam was rebuilt in the same year. The plaintiffs' contention was, that the defendant's rights were limited and defined, by the agreement of Burger and Behringer, to the privileges exercised and enjoyed by Christian Young during his occupancy of the premises, and they called witnesses to identify the sandstone rock, which they alleged had been thus established as the water mark, to show that the water was at times in fact raised to a depth of ten inches or more over it, and to show the injury resulting therefrom in the operation of their mill.

On the part of the defendant, the agreement between Burger and Behringer was not specifically denied, but he introduced evidence tending to show that the sandstone rock, referred to by the plaintiffs' witnesses, was not the rock to which the declaration applied; that the true water mark was another rock higher on the stream. This, of course, was a matter for the jury, and the facts, as alleged on either side, are only here referred to for the better understanding of the question now to be considered.

The defendant contended, and called witnesses to show, that the dam was built in the year 1843, and that since that time, and for twenty-one years prior to the bringing of this suit, it had been maintained in precisely the same form, and to the same and no greater height; that the structure was identically the same in all respects, at the time when the suit was brought, as it had been at any time during the twenty-one years prior to that time, and that this long continued enjoyment of the easement or water privilege, under the facts and circumstances of the case, raised a legal presumption of a corresponding grant, and of his right to hold it.

Even if the jury should find the lower rock to be the true water mark, according to the agreement of Peter and Christian Young, and that the defendant had the right, under the agreement, only to raise the water four inches above that rock, he might upon a proper showing establish a legal presumption of a further grant. Where an easement is granted, to be exercised within certain limits, and the grantee openly exercises a privilege in excess of the limit, continuously and without

interruption for twenty-one years, under claim of right, the law may presume a second grant superadded to the first, covering the larger right. The grant of the privilege to raise the water four inches, over a certain mark, is in no way inconsistent with a presumption, which may properly arise, of a further grant, to use the water to a higher level.

In submitting the evidence to the jury upon this question the court instructed the jury as follows :—

"In considering the question as to whether the defendant Gehman acquired a right by prescription, you will inquire whether at any time since 1843, there has been twenty-one years, at a stretch, that the owners of the Gehman mill swelled the water up higher than what is shown by the four inches above the stone." . . . . . "That again you will consider and then if you come to consider that part of the case you will inquire:—Where is the testimony of the witnesses to show that for twenty-one years, at any time since 1843, there was a use of this water, so as to swell it back over the four inches. If you do not find such evidence, you will say that under no consideration is the title by prescription established."

In this we think there was error. If the defendant, or those under whom he claims, for a period of. twenty-one years before suit brought, under a claim of right, openly, continuously and uninterruptedly maintained his dam, the breast wall or structure of which was at all times during that period of the same height, whilst the owner and possessor of the lands, upon which the reservoir and race were located, was under no disability to resist the use, the law will presume a grant of the easement, the extent of which is to be measured not by the actual or average depth of the water at any given point, but by the nature and extent of the obstruction itself. The depth of the water, even in such a basin, is necessarily inconstant and variable, but the height of the dam structure is fixed and certain, and readily ascertainable.

The defendant's rights, under the agreement of 1843, are doubtless to be determined by the depth of the water on the rock, as that. is the provision of his contract, but his right as to the further easement, if any existed, was to obstruct the current and raise the water, according to the height of the structure which he had erected in the stream for that purpose. The extent of the right must necessarily be thus defined; the changing conditions of the stream, from rain and drought, breaking the continuity of the use, would render the acquisition of an easement of this character, by legal presumption of previous grant, impossible. We express no opinion as to the force or weight of the evidence on this

point, that is a matter for the jury; it is our duty to determine, whether the question was fairly presented for their consideration. The tenth assignment of error is therefore sustained.

The first assignment is in substance that the charge of the court, tended to mislead the jury and was not a fair presentation of the case as a whole; that it omitted facts material to the case of the plaintiff in error, and gave undue prominence to the evidence of the defendants in error.

The second, third, fourth, fifth, sixth and seventh assignments illustrate, in detail, the matter generally set forth in the first, and the whole of these several assignments may be considered together.

We have with some care read the testimony of all the witnesses examined in the cause, and are of opinion, that the charge of the learned court is perhaps open to the criticism contained in these assignments. The testimony was voluminous, and as the plaintiffs in error complain, the jury would doubtless rely upon and be largely influenced by the impressions received from the rehearsal of it by the court; it was important, therefore, that the *résumé* should be as full on the one side as the other, that the jury might not be misled. This error, of course, resulted either from mere inadvertence, or from a desire to shorten a charge which was growing to an unusual length. Upon this ground alone, we would not perhaps have been inclined to reverse this judgment, but as the cause must go back for re-trial, we have thus referred to the subject of these assignments, in order that the same error may be avoided.

There is no merit in the remaining assignments.

> The judgment is reversed, and a venire facias de novo awarded.