## Chesney v. Lehigh Valley Coal Company.

Joseph S. Hollister and G. H. Gerber, for plaintiff.

Edward J. Flynn, for defendant.

PER CURIAM.—This is an action of trespass instituted by the plaintiff to recover for damages to her realty and personalty caused by several overflows of Shamokin Creek. By agreement of counsel for the respective parties, the case was submitted to the court without a jury. The history of the case, the plaintiff's allegations of negligence, the defendant's ground of defense, the separate findings of fact and conclusions of law as stated by the court are all set out in the opinion heretofore filed, a reference to which is now made and need not now be here repeated. The question of defendant's liability was resolved in favor of the plaintiff and damages awarded in the sum of $3081.48.

In view of the large number of like cases now before us, we invited, in our written opinion, counsel for the respective parties to raise all questions by their present exceptions, so that a final disposition thereof may be made and the future litigation simplified and expedited. That they have availed themselves of this invitation is evidenced by the fact that plaintiff has filed twenty exceptions, consisting of twenty-five paragraphs, and the defendant twenty-

five exceptions to the opinion of the court and our answers to their respective requests. It would thus appear that all questions likely to arise in the pending cases may now be determined and set at rest.

All of the plaintiff's exceptions bear upon questions of damages and are susceptible of grouping into five distinct classes: Class 1, those exceptions—one to twelve, inclusive—relating to inadequate allowances or disallowances of damages for injuries to the personalty and realty; class 2, those exceptions—thirteen to sixteen, inclusive—relating to disallowances of compensation for delay in payment; class 3, those exceptions—seventeen and twenty—relating to disallowance of compensation for inconvenience; class 4, eighteenth exception, for disallowance of interest from the date of injury; class 5, the nineteenth exception, for disallowance of punitive damages.

The defendant's exceptions cover a wide range, embrace phases of the case not contemplated in plaintiff's exceptions, and can be more intelligently disposed of when considered separately.

We shall, therefore, proceed to consider plaintiff's exceptions. Speaking generally of exceptions in group one and with special reference to damages to personalty, it may be said that real value becomes the measure of damages, in cases such as the one before us, only when market value cannot be shown: Stauffer v. Miller Soap Co., 151 Pa. 330. But whatever measure be adopted, whether the real or market value, the amount of the damages is to be determined by the value of the injured article at the date of the injury—and this applies to growing crops: Taylor v. Canton Township, 30 Pa. Superior Ct. 305. In no event may damages be allowed for injuries to property unless value be shown, or such description of the injured article be given as will convey sufficient information upon which to base an intelligent estimate of value. And where damages are sought to be established by an opinion of value, an estimate in a lump sum without a specification of the items forming a basis for the estimate is not sufficient for that purpose: Adam Robb v. Carnegie Bros. & Co., 145 Pa. 324. In the present case the disallowances resulted, not from the application of the rule of market value as the measure of damages, but because the evidence, when viewed in the light of the foregoing observations, was insufficient to establish with any degree of certainty any satisfactory basis upon which to found a value as of the date of the injury.

This brings us to a consideration of the specific items of complaint.

Exceptions under class 1.

The second exception complains: "That the court erred in fixing the value of the garden truck on its own opinion, not supported by any evidence."

Our allowance for this item was $10. The estimate of the plaintiff was based upon a lump sum and was fixed at $30. She could furnish no details of the items of value making up her estimate, nor did the whole of her testimony furnish a satisfactory basis for estimating the value. Moreover, it was clear that her estimate was based upon the value of the truck when and if harvested and not as of the date of the injury. In making the original allowance, we felt that the plaintiff had sustained some loss upon this item and thus desired to adjust it on equitable grounds; but, inasmuch as the plaintiff objects to that method, it must now be determined upon the strict application of legal principles. The evidence viewed in this light requires us to now disallow the $10 heretofore allowed as not being sufficiently supported by the evidence.

The third and fourth exceptions: "That the court erred in not awarding damages for the loss of ornamental bushes, flowers or grape vine, and in not allowing for loss of grapes in the years 1920 to 1927, inclusive."

There was no evidence to establish the value of the grape vines. The plaintiff testified that the annual crop prior to 1919 was worth about $20. Although the vines were destroyed in July, 1919, before the crops came to maturity, we allowed her $20 for the grapes for that year. That was full compensation under the evidence. To make an annual allowance of that amount for the subsequent years would manifestly be unjust to the defendant, for the reason that the crops are too uncertain and speculative and because it would be an application of the wrong measure of damages, which is the value of the vines as they were at the date of injury in July, 1919, and as they then stood with a crop of immature grapes. It was for the plaintiff to produce satisfactory evidence of this value, and having failed in this respect, no allowance can be made.

As to the damages to ornamental bushes, the plaintiff in her direct examination fixed the values predicated by their cost at figures varying from $1 to $2.50 for each bush; but under cross-examination she testified that her husband bought the plants and that she did not know what they cost. It was thus established that the basis upon which she predicated her opinion lacks substance, and no allowance can be made.

Exception 5: "The court erred in allowing only $10 for loss of garden truck in years 1920 to 1924, both inclusive. The evidence is that the garden was not productive until 1927."

This exception is subject to the same observations as we made to exception No. 2, and for the reasons there given, the $50 as originally allowed must now be disallowed and stricken off.

Exception 6: "The court erred in requiring the plaintiff to furnish names, addresses, descriptions of men and receipts for amount paid to each of the men, she having testified to the amount paid per day and the number of days."

This exception complains of our disallowance of claims for moneys alleged to have been paid to several laborers for services rendered in cleaning up the debris after the several floods. In disallowing it, we said that she could furnish neither names, nor addresses, nor descriptions, nor receipts. By this we are not to be understood as meaning that all of these elements must be shown in order to sustain the claim, but what we do mean is that at least some of them should be presented. The damages must be proven like every other fact in the case, and to allow the present claim on the evidence as produced would be tantamount to saying that the mere statement of the claim is of itself sufficient to support it. We repeat here what we said in our opinion: "Generally speaking, the testimony should be sufficiently definite to afford the persons sought to be charged an opportunity of testing it, checking it up or contradicting it and such as would reasonably lead the mind to a conviction of the truth thereof."

Exception 7: "The court erred in disallowing the claim for flooring and labor on the stable, the size of the stable and other information being sufficient for a jury (the court) to fix the damage for this item."

The plaintiff's witness, Mr. Boyer, estimated the cost of raising and repairing the stable at $35, based upon a six-foot raise. As plaintiff's recovery is limited to the cost of a three-foot raise, we apportioned the estimate and fixed the estimate at $17.50. The complaint is now that a further award of $38 should have been made for flooring purchased and laid by the plaintiff. The evidence in relation thereto was on a par with the evidence produced to sustain her claim as discussed under the immediately preceding exception. The observations there made are applicable to this exception. And for the reasons given in our opinion, no allowance could have been made for this item. More-

over, it is significant that while the plaintiff in her forty-second request for findings of fact itemized the damages for which she claimed allowance, no claim was there made for the item now under consideration.

Exception 8: "The court erred in holding that the evidence as to the value is insufficient to allow any damage for loss of clothing, the court requiring proof of market value, which is not necessary in claims for personal property lost through the tort of the defendant."

The plaintiff's estimate, upon direct examination, was based upon a lump sum of $20. Her cross-examination discloses no satisfactory basis for the estimate, which if made at $75 or more would be entitled to just as much weight as her estimate of $20. Our observations made under exception 2 are applicable to this exception. We repeat: "The disallowance resulted not from the application of the rule of market value as the measure of damages, but because the evidence was insufficient to establish with any degree of certainty the real value."

Exception 9: "The court erred in holding that the evidence as to value is insufficient to allow damages for the cupboard, evidence of loss being furnished, market value need not be proved in actions for loss through the tort of the defendant."

The only evidence offered in support of this item was that a cupboard which some time prior to the injury cost $10.50 was destroyed. There was no evidence of its value at the time of the injury and no description from which a value could be approximated. No allowance could be made.

Exception 10: "The court erred in holding that the evidence of James Reinard is competent and to be considered as an estimate in connection with cost of raising the double and single houses on the lot."

Testimony of the witness John Reinard was competent. His lack of knowledge of the details of the building affected only its weight. But, in any event, the plaintiff was not prejudiced by this testimony, for, as we shall show under our disposition of the eleventh and twelfth exceptions, our assessment was made upon the testimony of plaintiff's witness, Mr. Boyer, viewed in the light of the controlling legal principles.

Exceptions 11 and 12: "The court erred in fixing the cost of raising the double house at $1189.76, said amount is a figure not supported by any evidence, and erred in fixing the cost of restoring the middle house at $651.20, said amount is an arbitrary figure, not supported by any competent evidence."

These exceptions raise the same questions and will be considered together. The argument in support of them is founded upon two suspicions—the word is used advisedly. First, that we gave undue weight to the testimony of the witness Reinard; and, second, that we arbitrarily set down the figures regardless of the evidence. We did neither. The argument upon the exceptions challenged not only the correctness of the assessment, but the fairness and honesty as well. It, therefore, calls for notice. To demonstrate just how groundless these suspicions are we shall elucidate our findings.

The measure of damages adopted by us and to which we still adhere, as applicable to these items, is laid down in the case of Gift v. City of Reading, 3 Pa. Superior Ct. 359. Here, as there, the plaintiff and her family continued to reside in her house notwithstanding the floods. The measure as there laid down is contained in the following excerpt from the opinion:

" 'None of the plaintiff's real estate was taken for any public use by the defendant. The property was not wholly destroyed or irreparably injured. It appears that the plaintiff and her family continued to reside in the house, notwithstanding the floods, and, with the exception of the cellar, used it as

before the diversion of the water. If, therefore, the defendant is liable at all, it is for such injuries only as were done to the property, and the measure of compensation would be the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages:' Lentz v. Carnegie Bros. Co., 145 Pa. 612; Eshleman v. Township, 152 Pa. 68."

What is meant by the phrase "restoring to its former condition?"

In Anderson v. Miller, 96 Tenn. 35; 7 Am. Law Reps. 293; 31 L. R. A. 604; 54 Am. St. Reps. 812; 33 S. W. Repr. 615, the jury were instructed that the measure of damages would be the reasonable cost of restoring property which had been partially destroyed by fire, communicated to it by a fire on adjoining premises, to its former condition. The court held that the instructions were correct, since they meant that the building, as replaced, should be of equal value to that destroyed, taking into consideration depreciation due to age. It was said: "In regard to the measure of damages, the charge of the court was correct in directing the jury that it would be the reasonable cost of restoring the property to its former condition. This does not mean, as argued by counsel, that it was the cost of a new building, the same as that destroyed, and the jury could not have so understood it, but the proper construction was that the building, as restored, should be of equal value to that destroyed, taking age and depreciation into consideration."

The plaintiff's witness, Mr. Boyer, gave it as his opinion that the building was about twenty years old.

It is also to be remembered that the estimate of this witness was not based upon any knowledge of the condition of the house prior to or at the time of its being raised, but upon inspection made by the witness after the house had been raised to a height of six feet, whereas the liability of the defendant was limited to a raise of three feet. As bearing upon the effect of raising the building, and especially as bearing upon the difference in the effect of raising it to a height of three feet instead of to a height of six feet, he testified:

"A. The most damage is in the outside sills, which are usually bad in an old building; if it is not raised, it would continue to hold the building up for a long while, but where the building is moved, new sills are required, and that is what causes the greater part of the damage; the raising does not necessarily disturb anything about the floors. Q. I understand your testimony in relation to the cost of raising as it becomes higher, what is the effect as you continue to raise higher on the plastering and the papering and on the old building? A. The effect would be that the higher the building is raised the harder it would be on the plastering and on the papering which would be the same. Q. Is that also true on the old material on the old building? A. Yes, sir; the replacements in the raising; any replacement would practically be the same. Q. The higher you go up necessarily there would be an increased damage to that building? A. The plaster, yes, sir."

In relation to the steps, he testified as follows:

"Q. Now these new steps that you figure cost $72; do you know whether or not they are replacing old steps? A. That is something now that I don't know about; the building was raised—do you mean the four pairs outside and the two pairs in the cellar? Q. The outside steps; do you know whether or not there was outside steps? A. Why I suppose there was. Q. Don't suppose, please! A. I don't know. Q. This estimate of yours is based on new steps? A. Yes, sir. Q. That is, steps in front of each front door? A. No,

sir, not in front; one door—a pair for the two front doors for each family, in the rear a pair. Q. The steps that I refer to are in the rear? A. Two pairs in the rear and one pair in front. Q. That testimony is based on new porches and new steps?"

He further testified positively that he had no knowledge of the condition of either the plastering, papering or steps at the time the building was raised, nor was there any evidence to show what the conditions were.

With Boyer's testimony before us, viewed in the light of the foregoing factors, let us now see how far we departed from it and to what extent our allowance is "arbitrary." A comparison between our allowance and the plaintiff's 42nd request for finding of fact is illuminating. Presumably the plaintiff's request is most favorable to herself and is based upon the testimony of Boyer, and Boyer alone. That portion of her said request pertinent to the present inquiry and applicable to the front house is as follows:

### Damages for building and filling lot.

| | |
|---|---:|
| Raising house 3 feet | $ 180.00 |
| Finishing in basements | 540.00 |
| Plastering | 234.00 |
| Repairing 12 rooms and two attics | 360.00 |
| Raising walls 3 feet | 244.80 |
| Airy-way on one side | 28.00 |
| Airy-way on other side | 24.00 |
| Steps | 72.00 |
| 2 pairs cellar steps | 36.00 |
| | $1718.80 |
| Cost 10% less in 1919 | 171.88 |
| Actual cost 1919 | $1536.92 |
| Add 10% contractor's profit | 153.69 |
| | $1690.61 |

Our allowance, although not detailed in the opinion, is herewith itemized as follows:

### Front house.

| | |
|---|---:|
| Raising house 3 feet | $ 180.00 |
| Finishing in basements | 324.00 |
| Repairing 12 rooms, 2 attics | 216.00 |
| Raising walls 3 feet | 244.80 |
| Airy-way, one side | 28.00 |
| Airy-way, other side | 24.00 |
| Steps, outside | 43.20 |
| 2 pairs cellar steps | 21.60 |
| | $1081.60 |
| 10% contractor's profit | 108.16 |
| | $1189.76 |

Comparing the figures, it appears that our allowances for the raising of the house, raising of the walls, areaway on one side and areaway on the other side are precisely the same as those contained in the plaintiff's request, *supra*.

The item "finishing in basements $540.00" could not be allowed in its entirety. It represents the estimate of Boyer for new plastering and new papering throughout the entire house, and while there was no precise testimony as to the percentage of depreciation, yet a reasonable regard must be had for depreciation arising from natural wear and tear, age and decay, and especially must due consideration be given to the extra damage caused by excess raising of the house. We, therefore, conclude that 60 per cent. of the estimate was the outside figure to which the plaintiff was entitled, and thus reached the figure in our allowance of $324 for that item. We still hold that that allowance is pre-eminently reasonable. The request for the item, "plastering, $234.00," could not be allowed. This for the reason that, in our opinion, it is embraced in the item of $540, just considered, and as explained by the witness Boyer. To allow it separately from the $540 would be a duplication and thus impose upon the defendant a double liability for that item. The request for the item, "repairing 12 rooms and 2 attics, $360.00," could not be allowed in its entirety for the same reason as just given in our relation to the request for the item of $540. The testimony of Boyer is that "they were in pretty bad condition." Our allowance is 60 per cent. of Boyer's estimate, or $216. This, too, in our opinion, is a most favorable assessment for the plaintiff. Neither could either of the remaining two requests—"steps, $72.00," or "2 pair of cellar steps, $36.00"—be allowed in their entirety. Both of these figures are based upon Boyer's estimate of new steps and are predicated upon a raise of six feet. We repeat again that defendant's liability is limited to costs incidental to a raise of three feet. Naturally, both of these items call for an immediate reduction of 50 per cent., but, having a regard to the fact that the landings would not be affected by the extent of the raise and that depreciation would not be a proper factor for reduction as to these items, we increased the allowance by a further 10 per cent. and thus made a deduction of 40 per cent., or, in other words, an allowance of 60 per cent. of Boyer's estimate, to wit, $43.20 and $21.60 for these items, respectively.

It is thus shown that our assessment was based upon the testimony of the plaintiff's witness, Boyer, and was not the mere result of arbitrary figures.

Proceeding now to similarly consider the allowance for damages to the middle house, we extract from the plaintiff's 42nd request for findings of fact as follows:

### Four-roomed house on middle of lot.

| | |
|---|---|
| Raising 3 feet | $150.00 |
| Raising wall 3 feet | 154.80 |
| Plastering | 80.00 |
| Papering | 66.00 |
| Cellar steps | 18.00 |
| 2 pairs outside steps | 36.00 |
| Painting 2 pairs outside steps | 12.00 |
| Painting 2 basement rooms | 40.00 |
| Finishing 2 basement rooms | 192.00 |
| | $748.80 |
| Cost 10% less in 1919 | 74.88 |
| | $673.92 |
| Actual cost 1919 | $673.92 |
| Add 10% contractor's profit | 67.39 |
| | $741.31 |

Our allowance is $651.20, and is itemized as follows:

### Middle house.

| | |
|---|---:|
| Raising 3 feet | $150.00 |
| Raising walls 3 feet | 154.80 |
| Plastering | 48.00 |
| Papering | 39.60 |
| Cellar steps | 10.80 |
| 2 pairs outside steps | 21.60 |
| Painting 2 pairs outside steps | 12.00 |
| Painting 2 basement rooms | 40.00 |
| Finishing 2 basement rooms | 115.20 |
| | $592.00 |
| 10% contractor's profit | 59.20 |
| | $651.20 |

A comparison of the items and corresponding figures in these two statements show that our assessments for raising the house, raising the walls three feet, painting the outside steps and painting the basement rooms are identical with the plaintiff's request. The plastering, papering, cellar steps, outside steps and finishing two basement rooms are susceptible to the same reduction and the same observations as made to the immediately preceding item. For the reasons there given, we applied a 60 per cent. allowance of Boyer's estimate to these latter items and thus reached the figures set out in our assessment.

Exceptions under class 2.

The complaints under this class of exceptions arise mainly out of alleged errors in our statement of facts bearing upon the delayed trial of the case and our disallowance of compensation for delayed payment. That portion of the opinion to which the complaint is here directed is taken therefrom as follows:

"In the present case, as above stated, the damages had their inception in the flood of 1919. Suit was not instituted until 1921. The statement was not filed until 1923 and the case was not ordered on the trial list until 1925. None of these delays are chargeable to the defendant. Moreover, the plaintiff in her statement of claim laid her damages at $10,000. This, of itself, is not sufficient to warrant the belief of an extortionate demand, because it is the common practice in pleading to fix the amount claimed at a higher sum than the plaintiff is willing to accept or expects to get, but here the inordinate demand in the statement is followed by a request for a finding of fact fixing the damages at $6650.86. The defendant is justified in resisting, by litigation with its consequent delays, a demand so inordinately high, is excusable in not promptly paying and should not be visited with a penalty for non-payment."

This statement should be amplified by adding that plaintiff, by her 7th request for conclusions of law, insisted upon additional allowance for punitive damages and compensation for loss of use.

The docket entries show the institution of the suit on Aug. 9, 1921; filing of the statement April 10, 1923; "at issue" and ordered on the trial list June 4, 1923; continued Oct. 9, 1923; ordered off list until replaced by application of counsel Aug. 28, 1925. And thus, by repeated orders, the case was "on and off" the trial list until the foregoing agreement for trial was entered into by counsel for the respective parties. No reasons for these repeated continuations are stated in the docket. But the plaintiff's statement that they

were due to attempted efforts to compromise and negotiate settlement as well as to the illness of counsel and appeals then pending in other like cases, if accepted as the real reasons for the continuations, is not legally sufficient to charge the delays to defendant so as to visit penalties upon it. By this it is not meant, as argued by counsel, that we charge the delays to the plaintiff; but rather that they are chargeable to both parties and not to the defendant alone, for the reason that the benefits to be derived from settlements and delays in anticipation of the decisions of pending appeals inured to the benefit of both the parties.

Subsequently to the filing of our opinion and verdict, the plaintiff was awarded a rule upon which testimony tending to show the reasons for the delay was taken. No specific claim for damages for delay in payment was made in plaintiff's statement. Nor is it necessary to our decision here to decide whether, in the absence of such claim, an allowance therefor may be made. For, howsoever claimed, it is to be remembered that ordinarily the object of the measure of damages is compensation. Punishment is the exception. And when the plaintiff sought to bring her claim within the exception, whether a basis therefor was laid in her statement of claim or not, the burden rested upon her to produce testimony necessary to establish it. That was a part of her case in chief. Having failed in that, she ought not to have been accorded the privilege of such presentation after the close of the case and the rendition of the verdict. The rule was improvidently awarded, and the testimony will not now be considered. However, apart from this and as hereinbefore indicated, even the acceptance of plaintiff's supplementary testimony is insufficient to establish the claim.

When writing the opinion, the plaintiff's statement of claim was not in the files. Our recollection was that the amount claimed was $10,000. Since the filing of the exceptions, the statement was returned to the files and instead of showing a claim for $10,000, it shows a claim for $11,000 for temporary and permanent damages and a further claim of $6000 for punitive damages. That part of the opinion should, therefore, be amended so as to conform to the latter figures. *A fortiori*, the conclusions are strengthened.

Counsel in their printed brief argue that "at the conclusion of the trial there was absolutely no evidence that any demand had ever been made." Excepting the plaintiff's statement, that is correct; but if the plaintiff's statement be not a demand, then we are at a loss to understand what its real import is. But, aside from this, the eighteenth paragraph of plaintiff's statement of claim is a specific demand for the damages therein alleged to have been sustained.

We fully appreciate that in thus dignifying, by answer, these apparently trifling contentions we are violating the present practice of the courts to shorten its opinions. But we are constrained to this course in order to demonstrate the indecorum and captiousness that marked the plaintiff's argument.

Exceptions under class 3.

These exceptions complain of our action in refusing to affirm the plaintiff's 5th request for conclusions of law and to make an award for damages for full use and inconvenience.

Such action could not have been taken without doing violence to the applicable measure of damages. See Gift *v.* City of Reading, *supra.*

Exceptions under class 4.

The 18th exception complains of our action in refusing to affirm plaintiff's 6th request for conclusions of law. This request was for an allowance of interest from the date of injury to the date of trial. Our discussion of that

subject, as set out in the sixteenth, seventeenth and eighteenth pages of the opinion, is a sufficient answer to this exception.

Exceptions under class 5.

This exception complains of our action in refusing to affirm plaintiff's 7th request for conclusions of law. The request was for an allowance by way of punitive damages. This exception is sufficiently answered in our discussion on page nineteen of the opinion. Due to a clerical error, the case of Williams v. Metropolitan Edison Co., 267 Pa. 162, was mistakingly cited in support of our conclusion. The supporting authority is to be found in 207 Pa. 162, in the case of Lynch v. Troxell, and is now substituted for the authority there cited. The erroneous citation, however, in no way affected the conclusion there reached, and for the reasons indicated in our opinion, this exception cannot be sustained.

This brings us to a consideration of the defendant's exceptions.

Exception 1: This exception is fully answered in our answer to the request.

Exceptions 2 and 3: The testimony complained of in these exceptions was as definite as the nature of the case required and amply sufficient upon which to predicate a finding of damages.

Exception 4: The defendant's 18th request for finding of fact, as stated in this exception, was refused as drawn because it contained the implication that the deposits therein enumerated caused the overflow of the creek. That they were contributing factors cannot be gainsaid; but not to the extent charged by the request. Such contribution did not, however, operate to exonerate the defendant from liability. For the presence of such articles and the fact that a dumping ground was maintained near the creek and the likelihood that such material would find its way into the creek were circumstances of which the defendant was bound to take notice in its reconstruction of the channel. So that when it voluntarily assumed the task of narrowing it, it became charged with the duty of constructing it of sufficient width to properly vent the water and all other matter that might reasonably find their way into the channel.

Exception 5: The answer to defendant's 3rd request for conclusion of law is a sufficient answer to this request.

Exceptions 6, 7, 8 and 10: The defendant's request for conclusions of law, as set out in these exceptions, were refused because the necessity for raising the lot and the lands and buildings of the plaintiff sufficiently appears by the testimony, and to have affirmed the requests would have resulted in a denial to the plaintiff of the right to recover for injuries within the proper measure of damages.

Exception 9: The subject-matter of this exception is fully discussed in our opinion, which we submit as a complete answer hereto.

Exceptions 11 to 17, inclusive: All of these exceptions complain of errors in the separate findings of fact by the court. To detail the testimony from which they are taken would unduly lengthen the opinion without serving any useful purpose. It is sufficient to say that each and every one is fully warranted by testimony, both competent and ample.

Exceptions 18 to 24, inclusive: All of these exceptions complain of errors in our separate conclusions of law. These conclusions were the result of the application of the law, as we hold it to be, to the facts as found. The subject-matter of these exceptions finds full discussion in the opinion. No useful purpose would be conserved by repetition. Upon a reconsideration of the case, we can discover no errors, and these exceptions cannot be sustained.

Exception 25: This exception challenges the correctness of the verdict.

The correctness of the verdict is dependent upon the correctness of the facts as found and the application of the law pertinent thereto. As hereinbefore suggested, we have discovered no errors in either of these respects, and, hence, this exception cannot be sustained; excepting that the figures should be modified so as to conform to the disallowances hereinbefore made.

For the reason herein given, the plaintiff's 2nd and 5th exceptions must be sustained, the assessment heretofore made of $10 for garden truck and $50 for loss of use for 1924 must be disallowed; the remaining of plaintiff's exceptions and all of the defendant's exceptions must be dismissed.

Reducing our former assessment by the amount of these disallowances, the verdict should be amended to read $3021.48, and the following decree entered:

And now, Nov. 26, 1928, the plaintiff's 2nd and 5th exceptions are hereby sustained, the assessment heretofore made of $10 for garden truck and $50 for loss of use for 1924 are hereby disallowed, the remaining plaintiff's exceptions and all of defendant's exceptions are dismissed and judgment is hereby directed to be entered for the plaintiff, Annie Chesney, and against the defendant, the Lehigh Valley Coal Company, for the sum of $3021.48.

Exceptions are noted and bills sealed for both the plaintiff and defendant.

From C. M. Clement, Sunbury, Pa.