## Runner v. National Industrial Builders, Inc.

*Gerald F. Glackin*, for plaintiffs.
*John G. Kaufman* and *Arthur Lefkoe*, for defendant.

SCIRICA, J., November 20, 1972.—Plaintiffs brought a suit in equity to recover damages caused by a flood on July 28, 1969, August 4, 1969, March 13, 1970 and July 30, 1970. Hearing thereon was held January 4, 1971. On September 15, 1971, a decree nisi was entered awarding damages of $4,645.04 to plaintiffs. The decree also stated inter alia:

"3. Plaintiff is entitled to money damages for repairs to property, if any, which they have or will sustain since January 4, 1971, until the day on which the condition causing the flooding and damages is corrected."

Exceptions to the decree nisi were filed and these

were dismissed by order of the court en banc on February 14, 1972.

On September 13, 1971, two days prior to the entry of the aforesaid decree nisi, there was another flood and damages allegedly were sustained by plaintiffs. A hearing on this claim was held August 24, 1972.

At the hearing held January 4, 1971, defendant admitted liability as to the engineering errors in construction and emplacement of the 16-foot pipe, and that said pipe caused the flooding of plaintiffs' property. However, at the hearing held August 24, 1972, defendant denied liability for damages caused plaintiffs. The court is of the opinion that conditions caused by the engineering errors in construction and emplacement of the 16-foot pipe caused the damages sustained from the flood of September 13, 1971.

## FINDINGS OF FACT

1. The court adopts findings of fact 1, 2 and 3 of the adjudication entered September 15, 1971.

2. The conditions that existed September 13, 1971, in the bed of Gulph Creek on September 13, 1971, were the same as that which caused the damages awarded by the adjudication of September 15, 1971.

3. The flood on September 13, 1971, resulted from this pipe's inadequacy in allowing the natural volume of water to flow through it when the waters were high, and consequently the waters backed up and flooded plaintiffs' property, house and guest house, washed out the bridge to the guest house across the creek from the main residence, destroyed trees and shrubbery and damaged items of personal property in both houses.

4. As a result of this flood, plaintiffs have sustained the following damages:

| | | |
|---|---|---:|
| a. | Estimate of Earl W. Kuhnsman | $ 5,020.00 |
| b. | Estimate of Robert Kuhnsman | 3,125.00 |
| c. | Estimate of Carroll D. Hendricks | 4,851.50 |
| d. | Plaintiffs' labor: 240 hours at $1.50 per hour | 384.10 |
| e. | Miscellaneous items | 402.96 |
| | | $13,783.46 |

## DISCUSSION

Plaintiffs have by competent testimony and evidence sustained their burden of proof in establishing damages caused by defendant's Gulph Creek obstruction situated downstream from plaintiffs' property. As the court stated in Rohr v. Logan, 206 Pa. Superior Ct. 232, 239 (1965): "The testimony of the owners with regard to the value of goods lost or damaged is both competent and sufficient," and further, plaintiffs have proffered expert witnesses to account for and substantiate their damages suffered by reason of the September 13, 1971, flooding.

Defendant was not able to refute plaintiffs' credibility or that the damages were sustained and in the amounts claimed.

When the claim is for pecuniary damages to property of the character involved in this case, the evidence must fix the actual loss with reasonable precision through witnesses with knowledge of the facts. This burden is always upon the complaining party: Crowley v. Snellenburg, 89 Pa. Superior Ct. 263, 265 (1926). Plaintiff established by evidence a sufficient basis for estimating the damages with reasonable certainty: Wilcox v. Regester, 417 Pa. 475 (1965). Damages should not be estimated on the basis of mere conjecture or speculation and for that reason, some claims have not been allowed: Lorch v. Eglin, 369 Pa. 314 (1952). In light of the foregoing precedents, plaintiffs

have enervated their burden. Therefore, plaintiffs are entitled to compensation for all injuries naturally and approximately resulting from the wrongful acts of the defendant: Whetstone v. Bowser, 29 Pa. 59 (1857).

Defendant objected to the personal property appraisal by Mr. Carroll Hendricks on the grounds that he felt that plaintiffs had a chance to mitigate damages after having been put on reasonable notice of an existing dangerous condition. Hence, defense counsel questioned the possibility of duplication in defendant's being assessed for damages for carpeting and other items from the first flood for which plaintiffs had previously been awarded by the court. In support thereof, he cited 11 P.L. Encyc. 139, 140 §36, which provides:

"It is incumbent on the plaintiff to do everything he can to lessen his injury where he is entitled to damages for injuries to his person or to his property . . . He may not stand idly by and permit the loss to increase and then hold the wrongdoer liable for the loss which he might have prevented by reasonable exertion and reasonable expense."

Defendant's position is that, since plaintiffs knew that their property was subject to flooding and since they claim that the flood is due to defendant's obstruction in Gulph Creek and such obstruction had not been removed, and plaintiffs were aware of same, then, any personal property placed in the flood area or replaced after the first flood of July 1969, was at plaintiffs' own risk and in violation of the duty to minimize damages. However, notwithstanding the aforementioned duty of plaintiffs, they are not bound to exercise greater care in mitigating the consequences of an injury already inflicted than the law requires to avoid the injury in the first instance. 11 P.L. Encyc. 139, at page 141, it is stated that plaintiff has no option to

mitigate his damages by the most expensive method; he must use the method which is most reasonable and fair to both parties under the circumstances: Donnan v. Pennsylvania Torpedo Co., 26 Pa. Superior Ct. 324 (1904). In the instant case, plaintiffs, after having been flooded due to defendant's obstruction, had a restraining wall constructed on their property to alleviate any further flooding caused by water backing up by reason of defendant's obstruction downstream. Defendant's expert witness, Mr. Frank Urwiler, a civil engineer, testified that when defendant's pipe [obstruction] is filled with eight feet of water, there will be a backup of water.

It is well settled, where land is being injured (in the instant case by water), it is the duty of the landowner to use all reasonable skill and diligence to remedy and arrest the injury: 11 P.L. Encyc. 141. See Welliver v. Pennsylvania Canal Co., 23 Pa. Superior Ct. 79 (1903). In the case before the chancellor, plaintiffs did use such care to prevent any further flood damage to their premises: Dussell v. Kaufman Construction Co., 398 Pa. 369 (1960); Lynch v. Troxell, 207 Pa. 162 (1903); Huey v. Keller, 71 York 89 (1957). In addition, plaintiffs are entitled to reasonable compensation for their labor in attempting to protect their property from additional damages: Lynch, supra.

## CONCLUSIONS OF LAW

1. Damages sustained by plaintiffs' assessment of the flood on September 13, 1971, were covered by defendant's downstream obstruction of Gulph Creek.

2. Plaintiffs are entitled to a money judgment in the amount of $13,783.46.

## DECREE NISI

And now, November 20, 1972, in accordance with the above findings of fact and conclusions of law, it is hereby decreed that defendant pay to plaintiffs $13,783.46. This decree shall become the final decree unless exceptions are filed within 20 days.